STANDARD LIFE & ACCIDENT INS. CO. v. THORNTON.

(Circuit Court of Appeals, Sixth Circuit. March 19, 1900.)

No. 757.

1. TRIAL—DIRECTION OF VERDICT.
    A case can properly be withdrawn from the jury only where, on a survey of the whole evidence, and giving effect to every inference fairly or reasonably to be drawn from it, the case is palpably for the party asking a peremptory instruction.

2. ACCIDENT INSURANCE—ACTION FOR DEATH OF INSURED—DIRECTION OF VERDICT.
    In an action on an accident policy issued to plaintiff's intestate, to recover for his death, the answer pleaded suicide as a defense. It was shown that the insured was killed by falling from a railroad train in the night, some 3½ miles from the station at which he was to leave the train. The evidence as to the manner or cause of his falling from the car was inconclusive, although it tended to support defendant's theory, but was reconcilable with the theory of accident, and there was little or no evidence tending to show a previous suicidal intent, and none to show mental unsoundness. Held, that the court did not err in refusing to direct a verdict for the defendant, and in submitting the issue to the jury.

3. SAME—DEFENSE OF SUICIDE—BURDEN OF PROOF.
    In an action on an accident policy which excludes liability for death by suicide, the burden rests upon the defendant to establish the defense of suicide by a preponderance of evidence.

4. SAME—CONSTRUCTION OF POLICY—RIDING ON PLATFORM OF CAR.
    A passenger who is on the platform of a railroad car for a temporary and necessary purpose is not riding upon the platform, within the meaning of a condition of an accident policy excluding from the risks for which the company is liable the death or injury of the insured "while riding on the platform or steps of any railway car."

In Error to the Circuit Court of the United States for the Western District of Tennessee.

G. T. Fitzhugh, for plaintiff in error.
Wm. M. Randolph, for defendant in error.

Before LURTON and DAY, Circuit Judges, and CLARKE, District Judge.

DAY, Circuit Judge. This is an action to recover on a contract of accident insurance evidenced by a ticket issued to Stephen P.

Locke on the 28th day of December, 1897. The insurance was in the sum of $3,000, against immediate, continuous, or entire disability or death caused by bodily injuries inflicted solely by external, violent, and accidental means. Certain agreements and conditions are attached to the contract as conditions of the insurance,—among others, that the contract did not cover disappearance nor suicide, sane or insane; nor death nor disability resulting wholly or partly, directly or indirectly, from certain causes, conditions, and actions,— among others, voluntary and unnecessary exposure to danger, entering or trying to enter or leave a moving conveyance using steam as a motor, or while riding on the platform or steps of any railway car. The declaration was in the usual form, averring the issue of the accident ticket containing the terms above set forth; that complainant had kept and complied with the conditions and terms of the contract; and that on the 29th day of December, about 4 a. m., traveling as a passenger, in the regular and usual way, on a car attached to a train of cars passing along the railroad of the company known as the Kansas City, Memphis & Birmingham Railroad Company, from the city of Memphis, in the state of Tennessee, to the town of Jasper, in the state of Alabama, and at a point near the said town of Jasper, Locke was externally, violently, and accidentally thrown from the said train of cars, and thereby instantly killed. The answer, after pleading the general issue, sets up certain special pleas, in which it is averred: First. That the insured was not accidentally thrown from a train of cars, and that his injuries and death were not accidental. Second. That the contract expressly provided that it did not cover, and should not be enforcible in the event said Locke should commit suicide, sane or insane; and avers that said Locke did commit suicide on the 29th day of December, 1897, by voluntarily, and with intent to destroy his life, jumping or falling off a train of cars of the Kansas City, Memphis & Birmingham Railroad Company, he being then a passenger on said train, and said train at the time running at a high rate of speed. Third. That, in violation of the terms of said contract, said plaintiff's intestate came to his death in consequence of riding on the platform or steps of said train. Said train was at the time running at a high rate of speed between the city of Memphis and Jasper. Avers that the injuries were caused wholly or partly, directly or indirectly, while the said Locke was riding on the platform or steps of said railway car in express violation of the conditions of the contract. Fourth. Avers that said Locke came to his death because of a violation of the conditions of said contract, providing for no liability in case the assured should voluntarily and unnecessarily expose himself to danger. A replication was filed, taking issue on these several pleas, and the case went to trial to a jury, resulting in a recovery upon the policy.

Upon conclusion of the evidence a motion was made by the defendant to arrest the case from the jury, and to direct a verdict in favor of the defendant. The court, however, submitted the case to the jury, and afterwards overruled the motion for a new trial. In this court, upon this branch of the case, the only proper inquiry

is, should the court have directed a verdict? The practice in this respect is too well settled to need extended discussion. It was held in the case of Insurance Co. v. Randolph (decided in this court in February, 1897) 24 C. C. A. 305, 78 Fed. 754, in which the opinion was written by Mr. Justice Harlan, that:

"The jury should be permitted to return a verdict according to its own views of the facts, unless, upon a survey of the whole evidence, and giving effect to every inference to be fairly or reasonably drawn from it, the case is palpably for the party asking a peremptory instruction. On the other hand, a case cannot properly be withdrawn from the consideration of the jury simply because, in the judgment of the court, there is a preponderance of evidence in favor of the party asking a peremptory instruction."

The learned justice cites with approbation the opinion of Judge Lurton upon the same subject in the case of Railway Co. v. Lowery, 20 C. C. A. 596, 74 Fed. 463.

How stands the present case? Was it palpably with the defendant, and could the jury fairly draw no other inference from the testimony than that the decedent came to his death with suicidal intent? A careful examination of the facts disclosed in the record convinces us that, giving effect to the presumption of law against self-destruction, the case was not so palpably one of suicide as to justify this court in interfering with the action of the court below. The exact manner of decedent's death is left in great doubt from the testimony. Locke was a man about 50 years of age, of good character and habits, in good health, and with a family to whom he was devoted. It appears that upon the evening in question he remarked to a friend that he was going to Jasper, Ala., to get some money, and took passage from his home, the city of Memphis, to Jasper; purchasing before starting the accident ticket now sued upon, and one in the Travellers' Insurance Company for $6,000, both of which he mailed to his wife. This, however, appears to have been in accordance with his custom, as the testimony shows that he had been in the habit of buying such tickets and mailing them to his wife. Taking passage about 9 o'clock p. m., he went aboard the sleeping car, in which he had purchased a lower berth. He sat in the smoking room, conversing, until nearly 11 o'clock. About this time he went to his berth. The conductor of the Pullman testifies that about 12 o'clock he came in contact with the feet of a man sitting on the berth supposed to be occupied by Mr. Locke. It does appear that his berth was only occupied by lying down thereon. The porter had been instructed to call Mr. Locke before the train reached Jasper, and after it left Carbonhill. The train was due at Jasper at 4:02 a. m., and at Carbonhill at 3:25 a. m. The train was on time, running at about the rate of 32 miles an hour; and, after it left Carbonhill, the porter having ascertained that no one was in the berth assigned to Locke, a search was made for the missing passenger. The passenger and Pullman conductors and porter made a pretty thorough search of the car and train. There is some conflict in the proof as to whether they looked upon the rear platform, but it appears that Locke might have been seen, had he been on the platform at the time of the search. The search failed to dis-

cover his presence, and at Jasper the conductor reported to the master of transportation at Birmingham the loss of a passenger. The car upon which Locke took passage was supplied with vestibule appliances, and with a gate something over three feet high, and which the testimony tends to show was fastened when the car left Memphis, and was found secure when the car reached Birmingham. On the early morning after Locke had started upon his journey, his body was found on a trestle of the railroad $3\frac{1}{2}$ miles from Jasper. It was lying upon the cross-ties, between the rails of the track, with head towards Jasper, face down, arms stretched above head, and feet between the cross-ties. Near the top, in the back part of the head, was a cut, and on one of the cross-ties between the rails there was a small quantity of blood. The body had on the overcoat, as Locke had when last seen before he went to his berth in the sleeper. Upon examination it was found that his right arm was broken at the elbow, and that several ribs were broken, and it is testified that the injury upon the skull was sufficient to produce death. It seems that Locke had had some difficulty with the Cole Manufacturing Company in the July preceding the accident. He had long been connected with that company, and in July of 1897 a charge was made before the board of directors which Mr. Locke regarded as affecting his character, and which caused him to immediately tender his resignation, which was as promptly accepted. He did not have other employment up to the time of his decease, and had been engaged in the attempt to organize another company, but had not succeeded in doing so. There is a difference in the testimony of witnesses as to whether he was despondent or not, but the weight of the evidence is that he was not. While out of employment he was in good credit, and not in danger of immediate want. He is said to have been a man of unusual business qualifications, reticent about his affairs, and having no very close or confidential relations with others. Just how he came by his death is a matter of conjecture. On the one hand, it is argued that he could not have severed connection with the car except at the rear platform, where the vestibule doors would have prevented his getting off the train, except by throwing himself over the iron gate. On the other hand, it is claimed that he may have been thrown from the train, either from this car or from some of the connecting day coaches, which were not provided with vestibules, or may have gone to the rear platform of the train, to ascertain how far he was from his station, and have been suddenly thrown against the rear gate, which, if not fastened, would have given away. These are matters of conjecture. It is very probable that he left the train from the rear in some way. There is nothing in the testimony to warrant the court, in our judgment,—even the trial court,—in interfering with the conclusion reached by the jury. They may well have reached the determination that the testimony did not warrant the inference of suicide, and, though unable to find exactly the manner in which decedent was taken off, the facts could have been reconciled with the theory of accident more readily than that of suicide, giving the plaintiff the benefit of the presumption against self-destruction. The case, however, was sufficiently close to require at the hands of the court careful instruc-

tion to the jury as to the proper rules of law in weighing the testimony.

It is argued that the court erred in charging the jury that the burden of proof was upon the defendant to establish by the weight of the testimony that the decedent came to his death with suicidal intent. It is claimed that death by suicide is not within the terms of the policy considered without the exception subsequently incorporated into it; that, while there might be a presumption that the decedent did not commit suicide, still this does not place the burden of proof to establish suicide upon the defendant, but, giving the plaintiff the benefit of that presumption, the burden is still with him to make out a death within the terms of the policy. This position is not wanting in authority for its support. We think, however, that the question is settled for this court by the decision of the supreme court of the United States in the case of Insurance Co. v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360, 32 L. Ed. 308. In that case, as in this, the action was upon an accident policy, so far as the present question is concerned, like the one under consideration, and containing the same provision of nonliability in case of death by suicide. The answer set up the general issue, and alleged that the death was caused by suicide, and by intentional injury inflicted either by the insured or other persons. At the trial the court charged the jury that evidence of the fact that the insured was found dead during the life of the policy, from a pistol shot, was sufficient evidence that the insured met death by external and violent means, and said:

"It is manifest that self-destruction cannot be presumed. So strong is the instinctive love of life in the human breast, and so uniform the efforts of men to preserve their existence. that suicide cannot be presumed. The plaintiff is therefore entitled to recover unless the defendant has by competent evidence overcome this presumption, and satisfied the jury by a preponderance of evidence that the injuries which caused the death of the insured were intentional on his part."

Again the court below in that case charged.

"The burden of proving this allegation by a preponderance of evidence rests on the defendant. The presumption is that the death was not voluntary, and the defendant, in order to sustain the issue of suicide on his part, must overcome this presumption, and satisfy the jury that the death was voluntary."

This charge, approved by the supreme court, clearly told the jury that the burden of proof was upon the defendant to make out a case of suicide. Applying the principle of that case to the one at bar, we think it was sufficient for the plaintiff, in the first instance, to establish the death of Locke by external, violent, and accidental means. As Mr. Justice Harlan said, the principal facts to be established were external violence and accidental means producing death. The burden of proof was upon the plaintiff below to establish these facts.

The learned judge in the present case charged the jury that:

"The plaintiff, by the very terms of the contract, must prove by a preponderance of the proof, three things: (1) That death was by external means; (2) that it was violent; (3) that it was accidental. He assumed the burden of proving these three things by bringing the suit. and the burden of proving them has stayed with him, and is with him now, and continues always

with him until you end the case by your verdict. That the death was external and violent seems to be admitted, but that it was accidental is denied. Therefore the plaintiff must prove it, and, unless you believe on the whole proof that it was accidental, he cannot recover."

And again:

"If the jury believe from the evidence that Stephen P. Locke was a passenger on the train of cars of the Kansas City, Memphis & Birmingham Railroad company leaving Memphis about 9 p. m. on the 28th day of December, 1897, and scheduled in the regular time-table of the company to arrive at Jasper, Ala., about 4:02 a. m. of December 29, 1897, and that the train traveled on time, and that his dead body was found next morning, about 7 a. m., lying upon the cross-ties, with his head to the east and his feet to the west, between the rails of the same railroad, upon or near the west end of a trestle constructed in part of sawed square cross-ties, with sharp edges, extending over a common road about three and one-half or four miles west from Jasper, Ala.; that the night was cold, and frost had settled around the body when discovered; that when found he was lying upon his face; that there was a cut or fracture in the rear part of his head or skull, sufficient of itself to produce death; that when found both arms and several ribs were broken; that there was a pool of blood on the ground under or near where the body was found, and the mark or evidence of hair and blood on the sharp edge of one of the cross-ties of the trestle corresponding to the wound on the head, —then these facts, if proven, in the absence of proof to the contrary sufficient to overcome them, authorize the jury to find that the said Stephen P. Locke, within the twenty-four hours covered by the contract contained in the ticket of insurance sued on, came to his death by external, violent, and accidental means, within the contract, and authorize a verdict for the plaintiff on that issue."

We think this charge was correct. The death, under such circumstances, was by violent and external means, and the facts exclude every hypothesis except suicide or accident. This charge was in accordance with the decision of the supreme court of the United States, above quoted. As is well said in Mallory v. Insurance Co., 47 N. Y. 52, 54, quoted by Mr. Justice Harlan in the McConkey Case, supra:

"The presumption is against the latter [suicide]. It is contrary to the general conduct of mankind. It shows gross moral turpitude in a sane person."

This presumption must stand in the case, and be decisive of it, until overcome by testimony which shall outweigh the presumption. It casts upon the defendant who claims that the death was intentional the burden of establishing it by a preponderance of testimony. Upon this subject the court charged the jury, in substance, that the burden of proving that he died by suicide was on the defendant, and, if the testimony was so evenly balanced that the jury could not decide by a preponderance of testimony, the plaintiff must recover.

It is also provided in the policy that it shall not cover death resulting wholly or partly, directly or indirectly, from certain causes, conditions, and acts,—among others, from injuries resulting from riding on the platform or steps of a railway car. It is claimed in this case that the proof was that Locke was riding on the rear platform of the sleeping car, and that his death was a result thereof. This policy was likely drawn, having in view riding on platforms of cars not protected by doors such as are now in use on vestibule

trains. It is not necessary, however, to decide whether this clause would have effect, as regards such inclosed platforms. Assuming that there was some testimony to show that Locke, just before meeting a violent death, was riding on the platform, and that this risk was not assumed by the defendant, it might also be inferred that he was there for a temporary purpose. In view of the testimony, and the conflicting inferences which might be drawn therefrom, it became necessary to charge the jury upon this point, and the court said:

"What is meant by the phrase 'while riding on the platform or steps of any railway car'? The very literalism of the words would cover every possible injury or death which did not take place wholly inside the car, and away from any platform or steps, while the car is in motion. It seems to be conceded, however, by the defendant's counsel, that it was not intended to have this rigid meaning, when they admitted in argument that it permitted a passenger to pass across a platform from one car to another. But in the special requests that have been made for instruction since the argument concluded, and especially by request 22, it is now claimed that 'riding on the platform or steps of a railway car' means that, 'if any injury or death results to the insured while he is on a platform of any railway car, the company is not liable.' The court does not think that the phrase could have been intended to bear that construction, and defendant's request 22 is therefore refused. We have the authority of several cases used in the argument that the phrase 'standing, being, or riding on a platform or steps,' which is obviously a broader phrase than 'riding on the platform or steps,' will not be so rigidly construed as defendant's request 22 would construe the language under consideration. Because, says Judge Wallace, 'these words do not fairly refer to a transitory occupation of the platform.' Sawtelle v. Assurance Co., 15 Blatchf. 216, Fed. Cas. No. 12,392. Nor would being on the platform, for relief, when one was suffering from car sickness or nausea, be held to be 'a voluntary exposure to unnecessary danger,' or 'riding on a platform,' as held in Marx v. Insurance Co. (C. C.) 39 Fed. 321. These are examples of cases construing this phrase, which seem to establish the principle of reasonable interpretation that, although the insurance company has ample power to make its contract what it pleases, in the absence of express and ambiguous words, it will not be understood to have forbidden that temporary, transitory, and necessary occupation of the platforms which a traveler must risk in the use of the cars and trains, for the convenient prosecution of his journey. He may not occupy the platforms or steps for the purposes of 'riding' on the train as one would occupy a seat, or as one might occupy by standing in the aisles on the inside of the car for riding on the train; but for any necessary purpose, certainly, and for any reasonably convenient purpose, probably, which only required a momentary or temporary or transitory 'being' or 'standing' or 'riding' on the platform or steps, the traveler may be on the platform without violating this condition in the policy. For example, if one standing on a platform, waiting to enter the door while the crowd before him were entering and being seated, as might be the case in a rush for the dining car,—to use a suggestion made by one of the jurors to counsel in progress of the argument,—should be injured or killed, it could hardly be said that this condition of the policy was violated, because he was literally riding on the platform. Or, if one, having to look out for himself, should momentarily step to the platform to see if he had reached his station, could it be said that he was riding on the platform? These would be necessary purposes, in any fair sense of the words 'riding on the platform.' It would be mere literalism to hold such a temporary occupation to be 'riding on the platform,' although it is not impossible that such a situation might be covered by a prohibition from 'standing' or 'being' on a platform, as in the Minnesota case it was held that a waiting on the platform until the train should stop was within the broader phrase. I am not willing to say to you that any temporary occupation of the platform for the simple convenience of the traveler would be permitted by the condition of this policy, or that the liability of the company would exist where the injury or death

took place during such convenient occupation of the platform; but, without the least hesitation, the court may say to you that any necessary occupation of the platform which is temporary in its character, and does not amount to that more permanent occupation which might just as well be had inside the car as on the platform, so far as the traveler's convenience is concerned, would not be within the prohibition. The rule of law is that such an ambiguous expression as 'riding on the platform' or 'steps' will be construed most liberally for the holder of the ticket, and against the insurance company. Wherefore the word 'riding' must be limited to its ordinary sense of a more permanent occupation than merely standing or being on the platform for a temporary, but a necessary, purpose. And here it is worth observation that, in the immediately succeeding prohibition about the right of way, the word 'being' is used in the phraseology as above quoted, thus, 'while walking or being in the right of way,' etc. This shows that the company, while drafting the conditions, was careful of its phraseology; and inasmuch as the familiar expression in similar policies theretofore existing used the language 'standing, being, or riding,' there is some significance in the omission of the words 'standing or being,' in favor of the interpretation the court is now giving to the word 'riding.' I conclude the subject of the interpretation of the conditions about riding on the platform by saying to you: If you believe from all the testimony in this case that immediately before and at the moment Locke's body, designedly or undesignedly, left the train, he was occupying the platform, in the sense of 'riding' on it, as above defined, his administrator cannot recover; but if you believe from all the evidence that at that moment he was upon the platform temporarily only, and for any necessary purpose, and not sufficiently prolonged in the occupancy to amount to 'riding' on it, such temporary occupancy would not be within the prohibition of the policy."

We perceive no error in this charge. Applied to the testimony in this case, the jury should have found for the defendant, had they reached the conclusion that the deceased was occupying the platform for the purpose of riding thereon, but that a temporary occupation of the platform, for a necessary or proper purpose, did not mean riding upon it in the sense of the policy. We think this is the true rule. We think the charge in this respect was as liberal as the defendant could properly require.

Various exceptions are taken to certain phraseology in the charge, which we do consider it necessary to review. The defendant, to have avoided a recovery in this case, in the light of the testimony, must have established either that death was the result of suicidal intent of the decedent at the time of his injury, or was the result of riding on the platform in violation of the terms of the policy. We do not discover any testimony in the case tending to show that he voluntarily exposed himself to any known danger, unless it was in his occupation of the platform. The charge is unusually ample, and we think the questions involved were submitted to the jury in accordance with the rules of law. Finding no error in the record, the judgment is affirmed, with costs.