[S. F. No. 8085. In Bank.—April 21, 1919.]

MATTIE M. WILKINSON, Respondent, v. THE STAN-
    DARD ACCIDENT INSURANCE COMPANY OF
    DETROIT, MICHIGAN (a Corporation), Appellant.

[1] ACCIDENT INSURANCE — ACTION ON POLICY — MANNER OF DEATH —
EVIDENCE.—In this action on a policy insuring the plaintiff's hus-
band against death or disability resulting from accident, it cannot
be held, as a matter of law that, under all the circumstances and
the possible inferences to be drawn therefrom, the evidence adduced
upon the whole case is not sufficient to support the finding of the
jury, implied from their verdict, that the death of the deceased was
due to accident and not to suicide.

[2] ID.—DEATH THROUGH ACCIDENT OR SUICIDE — PRESUMPTION — IN-
STRUCTION.—In such action an instruction that where the insured
is found dead under such circumstances that death may have been
due to suicide or to accident, the presumption is against suicide and
in favor of accident, is proper, since such presumption necessarily
and logically follows from the statutory presumption "that a person
is innocent of crime or wrong."

[3] ID.—FACT NOT IN EVIDENCE—NONASSUMPTION BY INSTRUCTION.—
Such an instruction does not assume a fact not in evidence, but is
simply directed to the issue, plainly pointed out by the pleadings,
as to whether the decedent met his death through accident or suicide.

[4] ID.—BURDEN OF PROOF NOT SHIFTED BY INSTRUCTION.—Such an
instruction did not operate to shift the burden of proof, nor was it

contradictory of the court's other and general instruction that the burden of proof was on the plaintiff to prove death by accident.

[5] ID.—DETERMINATION OF MANNER OF DEATH—CIRCUMSTANTIAL EVIDENCE—APPROPRIATE INSTRUCTION.—Such an instruction is appropriate and proper in cases where the determination of the cause of death is dependent wholly upon circumstantial evidence which will fairly support either a finding of accident or one of suicide.

[6] ID.—PLEADING—TRUTH OF WARRANTIES IN POLICY.—In such action, the complaint is not demurrable for failure to show that the warranties set forth in the policy were true, where the warranties were not promissory in character.

[7] ID.—PERFORMANCE OF WARRANTY — AVERMENT WHEN UNNECESSARY.—Where nothing is required to be performed by an insured under a warranty there is no necessity for averring performance, for the reason that there is nothing to be performed, and under such circumstances an averment of performance would be useless and without meaning.

[8] ID.—WAIVER OF WRITTEN PROOF OF LOSS—SUFFICIENCY OF ALLEGATION.—An allegation reciting that plaintiff gave to defendant complete oral proofs of the facts and circumstances surrounding the death of the insured, and that, though requested, defendant refused to furnish to plaintiff the blank form of proofs, and denied all liability upon the policy, and informed plaintiff that it was useless for her to make proof of loss, was sufficient, since such denial of liability constituted a waiver of the condition requiring written proof of loss.

[9] ID.—POLICY INSURING BOTH PARTIES — FALSE STATEMENT AS TO AGE OF BENEFICIARY—VALID POLICY AS TO DECEASED.—Where an accident insurance policy is separable into two distinct contracts of insurance, one insuring the deceased, and the other insuring the beneficiary, any misrepresentation respecting the latter could not have any effect upon the contract insuring the former, and a false statement as to the age of the beneficiary would not avoid the policy as to the deceased.

APPEAL from a judgment of the Superior Court of Fresno County.   H. Z. Austin, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Johnston & Jones  and Myrick & Deering  for Appellant.

M. K. Harris  and Geo. Cosgrave  for Respondent.

LENNON, J.—This action was brought upon a policy which insured the plaintiff's husband, John H. Wilkinson, against

death or disability resulting from accident.    From a judgment in plaintiff's favor defendant appeals.

On October 5, 1914, Wilkinson was found dead in his bedroom by his wife.    There was no direct evidence as to the cause of the death, and the findings and judgment of the trial court rest upon the following uncontroverted facts and circumstances: Wilkinson's wife had gone to his room upon hearing the report of a revolver.    The body was found prostrate in front of a white enameled wash-bowl, with a bullet hole in the forehead.    There were no powder-marks or burns on the face.    A revolver lay near the knee, about three feet from the right hand.    There was a medicine chest above the bowl with a mirror on its door.    On the lower part of this mirror, and on the woodwork below it, was a spattering of blood and brain matter.    There was no such spattering on the bowl or in the water which was in the bowl.    A small drawer below the mirror, which had theretofore been known to contain Wilkinson's revolver, as well as his shaving materials, was open, with the leather holster still lying in the drawer.    There was a nick on the edge of the wash-bowl, together with a black mark, as if some hard object had fallen, chipping and discoloring the surface.    These marks were not upon the bowl prior to the shooting.    The bullet went straight into the forehead, slightly tearing the skin.    Such a wound, in the opinion of defendant's expert witnesses, would cause one to crumple up and fall immediately to the floor, and blood would spurt back out of the wound.    The absence of powder-marks on the flesh could be accounted for by the experts only upon the theory that the revolver had been placed directly against the skin.    On the other hand, a firearms expert testified on behalf of the plaintiff that a shot fired within a foot of the object penetrated would leave powder-marks on the surface around the hole, while if the muzzle of the weapon were pressed against the surface, "it will burn and smudge—crock," and be very apt to explode the gun.    He also testified that Wilkinson's revolver could have been discharged by a blow on the hammer, and that it was light on the trigger.    One of the defendant's witnesses testified to having seen Wilkinson going into the hotel where Wilkinson lived, on the evening of the shooting; that he was in the company of two persons; that he did not seem to have full control of himself, and seemed to be mildly resisting the efforts of his companions to get him into the hotel.    This testimony, however, was contradicted by

plaintiff. No motive for suicide was shown or attempted to be shown, and the evidence shows without conflict, that Wilkinson was a man of happy disposition, that he was free from domestic or business troubles, and that he was cheerful and in excellent health up to the time of his death.

Plaintiff's theory is that the circumstances attending the killing showed that Wilkinson, in taking his revolver from the drawer above the bowl, had accidentally dropped the weapon, and that it had fallen on to the bowl in such a position as to cause it to discharge a bullet into his head. Defendant's contention, on the other hand, is that there was no evidence in the case to support the theory of accident; but that, on the contrary, the circumstances shown absolutely precluded the possibility of accident, and therefore compel the conclusion that the deceased committed suicide. We cannot concur in this contention. It is neither inherently incredible nor altogether impossible that Wilkinson could have been accidentally shot and still have fallen backward. It is conceivable that he could have been standing erect, with his head inclined forward toward the bowl. In view of the reflexes of the human body, it is also conceivable that his head was in a sufficiently different position by the time blood spurted from the wound so that the blood discharged would reach a higher place than that from which the shot was fired. Moreover, it is not clear from the testimony that the body did fall straight backward, as defendant assumes, rather than crumpled up, as its witnesses testify would be the case if deceased had been bending forward at the time of the shot. It is not inconceivable that the gun was accidentally discharged while being taken from the drawer, which was just below the mirror and the spattering of blood. [1] In brief, we do not feel justified in holding, as a matter of law, that, under all the circumstances and the possible inferences to be drawn therefrom, the evidence adduced upon the whole case is not sufficient to support the finding of the jury, implied from their verdict, that the death of the deceased was due to accident and not to suicide.

The fact that plaintiff assumed in her testimony at the inquest immediately following her husband's death that he had committed suicide, as did the newspaper reporter who wrote an account of the episode, can have no conclusive effect, since this was no more than an inference in each instance. While it is possible that, had we been sitting as the jury in this case,

we should have come to a different conclusion from that at which the jury did arrive, still, upon the whole case, it is not open to us to say, as a matter of law, that there was no sufficient evidence to support the verdict and judgment.

Appellant assails the following instruction to the jury: "Where the insured is found dead under such circumstances that death may have been due to suicide or to accident, the presumption is against suicide and in favor of accident."

[2] The contention that there is no such presumption in this state cannot be sustained. This presumption necessarily and logically follows from the statutory presumption "that a person is innocent of crime or wrong." (Code Civ. Proc., sec. 1963, subd. 1; *Jenkin* v. *Pacific Mut. Life Ins. Co.*, 131 Cal. 121, [63 Pac. 780].)

[3] The instruction does not assume a fact not in evidence. The instruction was simply directed to the issue, plainly pointed by the pleadings, as to whether the decedent met his death through accident or suicide.

[4] It did not operate to shift the burden of proof from plaintiff to defendant, nor was it contradictory of the court's other and general instruction that the burden of proof was on the plaintiff to prove death by accident. As was said by Mr. Justice Sloss from the bench during 'the oral argument of the case: "There is no inconsistency in saying that the burden of proof is upon one party, and at the same time that certain circumstances will furnish a presumption which is an element of proof or item of evidence to be weighed in determining whether he has sustained that burden." Admittedly the facts of the present case exclude every cause of death save those of accident or suicide, and it is conceded that the solution of the question as to how the decedent came to his death is dependent entirely upon circumstantial evidence. In this particular the case is distinguishable from the case of *Weil* v. *Globe etc. Co.*, 179 App. Div. 166, [166 N. Y. Supp. 225], where there was the direct and uncontradicted evidence of several witnesses that the deceased deliberately jumped in front of a moving train. In that case the trial court charged the jury that "if the facts are equally susceptible of either construction—that is, suicide on the one hand, accident on the other—it will be presumed that the death was the result of an accident and not of a wrongful intent." This instruction was criticised and condemned by the court of last resort, chiefly because it ignored the direct evidence that the deceased volun-

tarily threw himself in front of an approaching train, and invoked the aid of a presumption ''which is available only for the purpose of taking the place of direct testimony with the burden of proof,'' and also because it was tantamount to charging the jury that if the evidence was equally balanced the law permitted the presumption to weigh in favor of the plaintiff, and thereby shifted the burden of producing a preponderance of the proof to the defendant.

In other words, the instruction condemned in the case cited was predicated upon the erroneous assumption that the evidence of the cause of death was wholly circumstantial and was equally susceptible to one of two opposing theories, whereas the instruction under review here merely postulates the opposing theories of accident and suicide, and did no more in our opinion than correctly charge the jury that when weighing the evidence they should give due weight to the presumption which the law indulges against suicide. **[5]** Such an instruction is appropriate and proper in cases where the determination of the cause of death is dependent wholly upon circumstantial evidence which will fairly support either a finding of accident or one of suicide. (*Weil* v. *Globe etc. Co.*, *supra;. Travelers' Ins. Co.* v. *McConkey*, 127 U. S. 661, [32 L. Ed. 308, 8 Sup. Ct. Rep. 1360, see, also, Rose's U. S. Notes] ; *Standard Life etc. Co.* v. *Thornton*, 100 Fed. 582, [49 L. R. A. 116, 40 C. C. A. 564] ; *Jenkin* v. *Pacific etc. Co.*, 131 Cal. 121, [63 Pac. 180].) And that, we think, is the condition in the present case.

Other grounds which have been urged for a reversal of the judgment were, we think, correctly disposed of by the appellate court for the first district in an opinion written by Mr. Justice Kerrigan, and we therefore adopt that opinion, which is as follows:

''It is claimed that the demurrer to the complaint should have been sustained; that certain warranties were untrue, for which reason the policy never attached to the risk; and that no written proof of death was given as required by the policy.

''The contention that the demurrer to the complaint should have been sustained is based upon the ground that it does not appear therefrom that the warranties set forth' in the policy were true, and for the further reason that the complaint simply alleges that oral proof of death was given, whereas the policy required written proof.

CLXXX Cal.—17

[6]. "With regard to the first objection it is sufficient to say that the warranties referred to were not promissory in character. [7] Where nothing is required to be performed by an insured under a warranty there is no necessity for averring performance, for the reason that there is nothing to be performed, and under such circumstances an averment of performance would be useless and without meaning. When a thing is warranted by the insured to exist or a representation to be true at a time when a policy becomes consummated as a contract, he has done all that he can do. `(Cowan v. Phoenix Ins. Co., 78 Cal. 181, [20 Pac. 408]; Berliner v. Travelers' Ins. Co., 121 Cal. 451, [53 Pac. 922].) It is only where the insured has warranted that he will do something that an averment of performance is required.

[8] "Nor do we think that there is any merit in the argument that the averment in the complaint with reference to loss under the policy is insufficient. The allegation upon this subject recites that plaintiff gave to defendant complete oral proof of the facts and circumstances surrounding the death of insured, and that, though requested, defendant refused to furnish to plaintiff the blank form of proofs, and denied all liability upon the policy, and informed plaintiff that it was useless for her to make proof of loss. Such denial of liability constitutes a waiver of the condition requiring proof of loss. (Civ. Code, sec. 1440; McCollough v. Home Ins. Co., 155 Cal. 659, [18 Ann. Cas. 862, 102 Pac. 814]; May on Insurance, 469.)

"The further objection that the complaint is insufficient for the reason that it does not appear therefrom that the waiver of the provision requiring proof of loss was written upon or attached to the policy, is disposed of in the opinion of Mr. Justice Sloss in McCollough v. Home Ins. Co., supra, and requires no discussion.

"Nor do we think the evidence supports appellant's contention that there was a lack of authority in the agents in making the waiver. We do not deem it necessary to review in detail the voluminous evidence upon this subject. Briefly, the evidence is as follows: One C. F. Briggs was the Pacific Coast superintendent of defendant company and had been acting as such for twenty-five years. Geo. R. Andrews was an agent of defendant at Fresno. Briggs had authority to look after the interests of the company generally. It was within

his power to issue policies without consulting the home office, and also to take up policies. The general course of the company in the Pacific territory was to act through Briggs. It was his business, among other things, to look into all cases when accidents happened and a liability was claimed against the company. He had the power to appoint agents to solicit insurance, and appointed Andrews. He also had power to settle cases for the company. The secretary of the company testified that when defendant wanted to cancel a policy and obtain its return from a policy-holder Briggs made the demand on the Pacific Coast, and that when denial of liability in death claims was made the general custom of the company was to convey the information direct from the home office to the policy-holder, or by special authority to Briggs; and that when they wished to offer the return of a premium that had been paid they had Briggs return it.

"Upon receiving news of the circumstances of the death of insured Briggs instructed Andrews to pay back the premium amounting to the sum of sixty dollars, and demand the policy. This Andrews did, at the same time advising the plaintiff that he did it under instructions from Briggs. The company, in the meantime being fully advised of all the proceedings, and within the time when proof of loss might have been furnished, ratified the action of Briggs in refusing to pay the plaintiff's claim and instructed him to recover the policy. This is evidenced by the correspondence between the company and Briggs. The action of the company could hardly be expected to be otherwise from the facts it had before it.

"We are further of the opinion that the claim that the evidence is insufficient to support the verdict because certain warranties contained in the policy were untrue is without merit. The untruthfulness of the warranties complained of consists in (1) that the insured gave the age of his wife as twenty-six when she was in fact thirty; (2) that insured was not at the time of the issuance of the policy a member of a firm but was an officer of a corporation of the same name.

"With reference to the first alleged false warranty, the policy provided as an additional benefit for a limited insurance in favor of the beneficiary if such person was over the age of eighteen years and under the age of sixty. It is true that courts have generally held a warranty as to age of the insured to be material. [9] Here, however, the policy, as

plaintiff contends, is separable into two distinct contracts of insurance, one insuring the deceased, the other insuring the plaintiff herself. Any misrepresentation respecting the beneficiary could in no manner have any effect upon the contract insuring deceased. The false statement here made was therefore a matter not material to the contract of insurance, of deceased, and had nothing to do with it. It is undoubtedly true, as claimed by the appellant, that an agreement between insurer and insured that the falsity of any statement in an application for insurance will avoid the policy, is binding; and that in such case the question of its materiality is of no consequence; but the policy here involved contained no such provision.

"The alleged breach of warranty concerning the occupation of deceased was surely not material, and appellant's contention with reference thereto requires no discussion."

For the foregoing reasons the judgment is affirmed.

Shaw, J., Wilbur, J., Melvin, J., Olney, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred except Lawlor, J., who was absent.