[L. A. No. 8716.  In Bank.—January 26, 1929.]

G. M. BOYER, as Administrator, etc., Respondent, v. UNITED STATES FIDELITY AND GUARANTY COMPANY (a Corporation), Appellant.

Horace W. B. Smith and Joe Crider, Jr., for Appellant.

Perry F. Backus, L. M. Turrentine, Wright & McKee and C. M. Monroe, for Respondent.

THE COURT.—These causes, consolidated for purposes of trial and appeal, were, upon petition of the plaintiff and respondent, taken over after decision by the district court of appeal, second appellate district, division one, Wood, J., *pro tem.*, writing the opinion, in order that we might more fully examine into and consider the questions of law presented. Further consideration has served only to impress us with the correctness of that court's conclusion, and we therefore adopt as and for the decision of this court, with such additional observations as will hereinafter appear, the following portions of the opinion of the district court of appeal:

"Defendant issued to Dora M. Rose an accident insurance policy on August 16, 1920, in the principal sum of $15,000. Dr. C. E. Calm was named as beneficiary in the policy. On August 19, 1920, Charles Emil Calm, the same Calm named as beneficiary in the Rose policy, applied for and obtained from the defendant an accident policy in the principal sum of $15,000, the beneficiary being Dora M. Rose. At the expiration of one year from the receipt of her policy Dora M. Rose, by rider attached thereto, changed the beneficiary to her estate. On May 22, 1923, Dora M. Rose and Dr. C. E.

Calm were killed in an automobile accident, Dora M. Rose surviving Dr. Calm by two hours. The administrator of the estate of Dora M. Rose filed two actions to recover on the policies. By stipulation the actions were tried together before the court without a jury and the same evidence was received in both cases. Appeals by defendant in both actions are now before us. The determination of the cases depends upon the construction to be given to the written applications for the policies signed by the insured in view of the stipulated facts and uncontradicted testimony. At the head of each of the applications we find these words: 'I hereby apply to the United States Fidelity and Guaranty Company for a Policy to be based upon the following representation of facts: I understand and agree that the right to recovery under any policy which may be issued upon the basis of this application shall be barred in the event that any one of the following statements, material either to the acceptance of the risk or the hazard assumed by the Company is false, or in the event that any one of the following statements is false and made with intent to deceive. I agree that this application shall not be binding upon the Company until accepted either by the Secretary at the Home Office or by an agent duly authorized to issue policies.' Then follow fifteen items, all in narrative form except the eighth. In these items the applicants set forth personal data such as is usually found in applications for insurance policies, the first giving the name of the insured, the second the residence, etc. Item 8 of the Rose application is as follows: 'Policy to be paid in case of death by accident under its provisions to Dr. C. E. Calm, Residence California Club. Relationship, Brother. Age 55.' After the fifteenth item the date appears, followed by the signature of the applicant. In the application signed by Dr. Calm three days later the same words are found, except for the variations occasioned by supplying the personal data of the applicant. In item 8 Dr. Calm named Dora M. Rose as the beneficiary and gave the relationship as that of sister. It was stipulated at the trial that Dr. Calm and Dora M. Rose were not brother and sister. By the testimony of Ruby Aikman, the driver of the automobile at the time of the accident, it was shown that the witness knew Dr. Calm and Dora M. Rose for some time before either of them made application to the defendant; that they introduced themselves to her and represented to her

that they were friends and not brother and sister. It was further shown that at the time the applications were presented to defendant, Dr. Calm was a married man. The administrator of the estate of Dora M. Rose promptly furnished defendant with written proof of the accidental deaths; whereupon defendant investigated the facts and learned that Dr. C. E. Calm and Dora M. Rose were not brother and sister. Defendant then tendered to the administrator the amount of the premiums paid and served written notice that the policies were void. The tender was refused.

"At the trial defendant produced two witnesses, Warren Griffith and George A. Calkins, who qualified as experts in matters of insurance and testified that according to the usage and custom of insurance companies in August, 1920, applications for insurance would not be accepted if made under the circumstances shown in evidence. They further testified that they were of the opinion that the statements contained in the applications to the effect that Dr. Calm was a brother of Dora M. Rose were material to the acceptance of the risk and to the hazard assumed by the defendant. At the close of the evidence that part of the testimony giving their opinion on the subject of the materiality of the statements was stricken out by the court upon motion of plaintiff. The court did not err in so doing. (25 Cyc. 937.) In *Penn Mutual Life Ins. Co.* v. *Mechanics' Savings Bank & Trust Co.*, 72 Fed. 413 [19 C. C. A. 286, 38 L. R. A. 33, 61], it is said: 'The great weight of authority in this country, however, is against the view that an insurance expert may be asked his own opinion whether the undisclosed or misrepresented facts were material to the risk. . . . The better authorities, however, seem to sustain the rule that the insurance experts may testify concerning the usage of insurance companies generally in charging higher rates of premium or rejecting risks, when made aware of the fact claimed to be material.'

"Insurance policies are governed by the same general rules which pertain to all contracts. There must be a meeting of the minds. Subject to the rule that their provisions must not be against public policy or in contravention of specific provisions of law, parties to the contract may make such agreements as they see fit, and the courts will enforce the terms mutually agreed upon. The policy and the ap-

plication therefore constitute the contract. In *McKenzie* v. *Scottish U. & N. Ins. Co.*, 112 Cal. 548, 556 [44 Pac. 922], the court said: 'Parties may contract as they please. When a condition precedent is adopted by them in their contract, the courts will not inquire into its wisdom or folly. . . . In *Wood* v. *Hartford Ins. Co.*, 13 Conn. 533 [35 Am. Dec. 92], a leading case on the subject of warranty, Sherman, J., said: "If a house be insured against fire, and the language of the policy is 'warranted, during the policy, to be covered with thatch,' the insurer will be discharged if, during the insurance, the house be covered with wood or metal, although his risk is diminished; for a warranty excludes all argument in regard to its reasonableness, or the probable intent of the parties." ' In *Jeffries* v. *Economical Mut. Life Ins. Co.*, 22 Wall. (U. S.) 47 [22 L. Ed. 833, see, also, Rose's U. S. Notes], this language is found: 'It is the distinct agreement of the parties, that the company shall not be deceived to its injury or to its benefit. The right of an individual or a corporation to make an unwise bargain is as complete as that to make a wise bargain. The right to make contracts carries with it the right to determine what is prudent and wise, what is unwise and imprudent, and upon that point the judgment of the individual is subject to that of no other tribunal.'

■ "In her application for the policy Dora M. Rose agreed that recovery would be barred 'if any one of the following statements . . . is false and made with intent to deceive.' If the words 'Relationship Brother' constitute a 'statement' and were made 'with intent to deceive,' plaintiff cannot, in view of the rule just set forth and the stipulation of the parties, prevail in the action. It is not necessary to decide whether the words amount to a warranty or representation, since the contract uses the word 'statement.' The entire application consists of fifteen items, preceded by the agreement hereinabove set forth and followed by the signature of the applicant. Item 8 appears in the midst of the others, all of which contain statements of fact. If it were in narrative form there could be no doubt but that a statement was made. For instance, if the language used were, 'The relationship is that of brother,' it could not possibly be contended that a statement was not made. Manifestly the two words 'Relationship Brother' were used for the sake of

brevity. Plaintiff has attached to his brief an exact copy of the application. It appears therefrom that the word 'Relationship' is printed and the word 'Brother' is in typewriting. By filling in the space allowed the word 'Relationship' as she did, the applicant doubtless meant to state to defendant that Dr. Calm bore the relation of brother to her. It was clearly the intention of the defendant to obtain, and of the applicant to impart, information on the subject of the relationship between the insured and the beneficiary. Considering the application as a whole, we are of the opinion that the applicant intended that all of the matter set forth over her signature was given to the defendant as information and as such was to be treated as statements.

"Next is presented the question whether the statement concerning the relationship of the beneficiary was made 'with intent to deceive.' Plaintiff argues that in order to bar a recovery there must be shown an intent to injure defendant. It was not so provided in the contract and, as has been seen, the court can enforce such agreements only as were made by the parties. If the parties had agreed that the intent referred to in the application was an intent to deceive the company to its injury, it would have been a simple matter to add to the application appropriate language to that effect after the word 'deceive.' Such language, embracing a different idea and an additional condition, cannot be supplied by the court. Doubtless the parties meant to agree that if the false statement were made knowingly and intentionally, the recovery would be barred. If, on the other hand, the statement were made inadvertently, it would not bar recovery, even though false, because there would be no intent to deceive. An example of such a false statement could be found in an error on the point of the age or the residence of the beneficiary. Erroneous statements by Dora M. Rose in her application that Dr. Calm was 54 rather than 55 years of age, and that he lived at a club other than the California Club, would doubtless be false statements, but not necessarily made with intent to deceive. They might be mistakes resulting from incorrect information on the part of the applicant. The statement on her part, however, that Dr. Calm, a married man and only a friend, bore the relation of brother to her could not possibly have been a mere mistake. There could be no inadvertence here. She must have intentionally stated

as true that which she knew to be untrue. Section 1709 of the Civil Code provides: 'One who wilfully deceives another with intent to induce him to alter his position to his injury or risk, is liable. . . . ' Here the position of defendant was altered to its risk and this was brought about by the false statement of the applicant, which must have been intentionally and wilfully made. Plaintiff cannot escape the result of the provision of the application by claiming that the false statement was not material, if indeed it be held that the statement in question was immaterial, since the contract provided that a false statement would void the policy in either of two events, if the false statement should be material to the acceptance of the risk, or if made with intent to deceive. By the plain agreement of the parties the materiality of the false statement is of no consequence if it was made with the intent to deceive. It is a matter of common knowledge that one may not obtain an insurance policy upon the life of another in whom the applicant has no insurable interest. It is not so generally known, however, that the rule is otherwise where the applicant obtains the policy on his own life. (14 Cal. Jur. 468; 14 R. C. L. 920.) It can be well argued that the applicant in the case at bar made the false statement in question in the fear that the application would be refused if the truth were known. Such action on her part would certainly be taken with intent to deceive. Our conclusion on this point will necessitate a reversal of the judgment, notwithstanding the finding of the trial court 'that the description of the beneficiary Dr. C. E. Calm as a brother of the insured, Dora M. Rose, when he was not a brother was not a statement material either to the acceptance of the risk or to the hazard assumed by the defendant, or a false statement made with intent to deceive the defendant.' It is the duty of the court to construe written instruments as a matter of law. The facts, which are extremely simple, were established by stipulation or by undisputed testimony. There was nothing for the trial judge to do as a trier of fact. His duty was to draw a legal conclusion from the instrument before him and the stipulation as to the relationship between the insured and the beneficiary. That a false statement was made with intent to deceive is the only reasonable conclusion that can be drawn therefrom. What has been said with

reference to the application for the Rose policy applies with equal force to the application of Dr. Calm. . . .

"It cannot be successfully argued that the situation of the parties was changed by the act of Dora M. Rose in changing beneficiaries a year after the policy was issued. Section 2612 of the Civil Code is as follows: 'A breach of warranty, without fraud, merely exonerates an insurer from the time that it occurs, or where it is broken in its inception prevents the policy from attaching to the risk.' In *Wolverine Brass Works* v. *Pacific Coast Casualty Co.*, 26 Cal. App. 183 [146 Pac. 184], it is said: 'The above mentioned warranties being false, the policy issued in reliance upon them was in our opinion void *ab initio.*' One who has practiced deceit upon an insurance company by making a false statement and thus has induced the issuance of a void policy cannot thereafter by merely changing the beneficiary compel the company to accept her as a risk and give life to the void policy. . . . "

▇ As indicated in that portion of the opinion hereinabove adopted, the application upon which the respective policies sued on were issued contained an introductory clause which provided in part that the applicant understood and agreed "that the right to recovery under any policy which may be issued upon the basis of this application shall be barred in the event that any one of the following statements, material either to the acceptance of the risk or the hazard assumed by the company is false, *or* in the event that any one of the following statements is *false and made with intent to deceive.*" (Italics ours.) That such an agreement might reasonably be exacted of an applicant for accident insurance is set at rest by section 6 of an act (Stats. 1917, p. 957) having to do with the provisions of policies of accident and health insurance. The section reads: "The falsity of any statement in the application for any policy covered by this act shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer." The similarity between the statutory provision and the introductory clause of the form of application employed by the appellant is immediately apparent. Said clause, reading in the disjunctive, constitutes an express agreement between the parties that any false statement as to a material matter,

whether intentionally falsified or not, shall bar recovery on the policy; or, in the alternative, that any false statement, whether material or not, made with *intent to deceive* shall likewise bar recovery. The authorities cited by the district court on appeal amply support its conclusion that the parties to an insurance contract may, with certain well-defined exceptions not here involved, "make such agreements as they see fit and the courts will enforce the terms mutually agreed upon." In this regard the case of *Wilkinson* v. *Standard Acc. Ins. Co.*, 180 Cal. 252, 260 [180 Pac. 607], recognizes the right of parties to insurance contracts to provide that the intentional falsification of an immaterial matter shall preclude recovery on the policy. It is there stated. "It is undoubtedly true . . . that an agreement between insurer and insured that the falsity of any statement in an application for insurance will avoid the policy, is binding; and that in such case the question of its materiality is of no consequence." The case of *Van Cleave* v. *Union Cas. & S. Co.*, 82 Mo. App. 668, 680, tends strongly to substantiate the further conclusion of the district court of appeal that an intentional false statement of a matter well within the knowledge of the applicant must be held to have been made "with intent to deceive."

Inasmuch as the judgments, for the reasons above stated, must be reversed, we have not found it necessary to definitely decide whether a representation or statement of relationship of the designated beneficiary to an assured is "material either to the acceptance of the risk or the hazard assumed." However, we are not thereby to be understood as having found appellant's contention in this regard to be entirely without merit. In our opinion the contention presents a subject upon which reasonably prudent men might well differ. We can readily perceive of circumstances under which such a representation as to the relation sustained between the beneficiary and assured might be a consideration of considerable moment to the insurer.

The judgments are, and each is, reversed.