Peyton SMYTHE, Loralei Smythe,
Plaintiffs–Appellants,

v.

SAFECO INSURANCE COMPANY OF
AMERICA; Armstrong Insurance
Group, Defendants–Appellees.

No. 01–55475.
D.C. No. CV–00–04324–CAS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 13, 2002.

Decided March 28, 2002.

Before KOZINSKI and GOULD, Circuit Judges, and BREYER, District Judge.*

MEMORANDUM **

**BACKGROUND**

Appellee Safeco Insurance Company of America ("Safeco") rescinded its home-owners' policy insuring appellants Loralei and Peyton Smythe ("the Smythes") on the ground that Peyton Smythe ("Smythe") made material misrepresentations about his insurance history at the time he applied for the Safeco policy. The Smythes subsequently filed a state law breach of contract/bad faith action. After the case was removed to federal court, the district court granted summary judgment in favor of Safeco on the ground there is no genuine issue as to whether Smythe made material misrepresentations, and, in

any event, even if Smythe did not, he had an affirmative duty to disclose such information. The Smythes appeal the summary judgment order.

**DISCUSSION**

**A. The Breach of Contract Claim**

Summary judgment on the breach of contract claim must be reversed because there is a genuine dispute as to whether Smythe made material misrepresentations when he applied for the Safeco policy.

**1. Smythe's declaration**

■ The district court erred in disregarding Smythe's declaration. The general rule is that "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991). " '[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.' " *Id.* (citations omitted).

This rule, however, is limited to " 'sham' testimony that flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment," *id.* at 267, and does not preclude a contradictory declaration that "is introduced to explain portions of earlier deposition testimony." *Id.* Contradictory testimony is not a sham where it is "the result of an honest discrepancy, a mistake, or the result of newly discovered evidence." *Id.* Thus, before a district court may disregard a con-

* Honorable Charles R. Breyer, United States District Judge for the Northern District of California, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

tradictory affidavit, it must make "a factual determination that the contradiction was actually a 'sham.'" *Id.*

The district court's finding that Smythe's declaration is a sham is not supported by the record. In the portion of the Examination Under Oath ("EUO") transcript cited by the district court, Smythe explained that he did not disclose the theft of the bicycles because "they never brought it up." He went on to respond "no" to the question: "Were you ever asked, 'Have you ever had any prior losses?'" Safeco's attorney then repeated his question about whether Smythe had been asked about prior losses. Smythe responded, "I can't recall that ever came up." This testimony is consistent with Smythe's declaration, or, at a minimum, does not "flatly contradict" Smythe's declaration. Smythe's response can be understood as stating that he cannot recall, but it might have come up, which is how the district court appears to have interpreted his testimony. It can also reasonably be understood, however, as stating that based on his own recollection he was not asked that question. This latter interpretation is especially reasonable in light of Smythe's responses to the previous questions; he unequivocally denied the agent asked him about prior losses.

■ The alleged implausibility of Smythe's declaration cannot support the grant of summary judgment. On summary judgment the court "must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (citation omitted). A court cannot "disregard direct evidence on the ground that no reasonable jury would believe it." *Id.; see also Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir.1987) (holding that on summary judgment the non-movant's declaration must be accepted as true and such direct evidence of a material fact should not be weighed against the evidence of the movant).

### 2. Concealment of material facts

■ The district court's alternative basis for summary judgment—that Smythe had a legal obligation to voluntarily disclose his insurance history—must also be reversed. Under California law, concealment of material facts "are grounds for rescission of the policy, and an actual intent to deceive need not be shown." *Thompson v. Occidental Life Ins. Co.*, 9 Cal.3d 904, 109 Cal.Rptr. 473, 513 P.2d 353, 360 (Cal.1973); *see also* Cal. Ins.Code § 332 ("Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining."). If, however, "the applicant for insurance had no present knowledge of the facts sought, or failed to appreciate the significance of information related to him, his incorrect or incomplete responses would not constitute grounds for rescission." *Thompson*, 109 Cal.Rptr. 473, 513 P.2d at 360. As we have noted: "It would be 'patently unfair' to allow the insurer to avoid its obligations under the policy on the basis of information that the applicant did not know, or alternatively, did not fully understand." *Miller v. Republic Nat'l Life Ins. Co.*, 789 F.2d 1336, 1340 (9th Cir.1986).

There is a triable issue as to whether Smythe appreciated the materiality of his insurance history. First, there is a genuine dispute as to whether Smythe knew his

insurer had issued a notice of intent to non-renew. If he was not aware of the notice of non-renewal, he cannot be faulted for failing to disclose the notice to Safeco. *See Thompson,* 109 Cal.Rptr. 473, 513 P.2d at 360. Although Smythe stated in his EUO that he had learned of the non-renewal before he applied for the Safeco insurance, in his declaration he explains that during the EUO he was confused about dates; he had attended the EUO without a lawyer, expecting to be questioned about the furs. In any event, as the district court never found that Smythe's declaration with respect to his knowledge of the notice of the non-renewal is a sham, it could not be disregarded. *See Kennedy,* 952 F.2d at 267.

Second, the circumstances viewed in the light most favorable to the Smythes do not support the conclusion that no reasonable jury could find that Smythe did not understand that his prior losses would be material to the insurer. Assuming, as we must, that Smythe was unaware of the notice of intent to non-renew, he would not have necessarily known the insurer would be interested in the two prior relatively minor losses ($2500 and $3500) which his insurer paid without question.

*Merchants Fire Assurance Corp. v. Lattimore,* 263 F.2d 232 (9th Cir.1959), does not support Safeco's contention that "[i]t is irrelevant whether Mr. Smythe believed the information regarding prior losses or non-renewals to be material." Appellee's Brief at 23. *Lattimore* was decided before the California Supreme Court's decision in *Thompson.*

We also note that the policy provides that it is void if an insured has "intentionally concealed" a material fact. There is a genuine dispute as to whether Smythe intentionally concealed his prior losses from Safeco.

### 3. Severability

■ The Smythes also argue for the first time on appeal that even if Smythe made a misrepresentation, the personal property rider insuring Loralei Smythe's fur coats is severable from the rest of the insurance contract and therefore Safeco could not rescind the entire policy based on Smythe's misrepresentation. While we ordinarily will not consider an issue raised for the first time on appeal, *see Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1487 n. 4 (9th Cir.1995), we have discretion to review such an issue if it is purely one of law. *See Columbia Steel Casting Co. v. Portland General Elec. Co.,* 111 F.3d 1427, 1443 (9th Cir.1996). As whether the policy is severable is a pure question of law, and as it is the Smythes who make the argument, we will address the issue.

There is not "a great deal of California authority with respect to when the various provisions of an insurance policy may be treated separately." *Coca Cola Bottling Co. v. Columbia Casualty Ins. Co.,* 11 Cal. App.4th 1176, 14 Cal.Rptr.2d 643, 650 (Cal. Ct.App.1992). No California court has held that a personal property rider on a married couple's homeowners' policy is severable from the policy itself simply because the rider insured the separate property of one of the spouses. Thus, the Smythes are asking us to make new California law. Neither existing California law nor common sense support such an extension.

In *Coca Cola Bottling Co.,* for example, the insured parent company obtained coverage for the risks created by several related subsidiary companies engaged in various activities. Coca Cola, a wholly owned subsidiary of the insured, subsequently made a claim under the automobile coverage in connection with a lawsuit arising out of an accident involving a Coca Cola truck.

The insurer, Columbia, responded by attempting to rescind the entire policy covering all of the companies for all of their various activities, on the ground that the insured made a misrepresentation with respect to the toxic shock syndrome risks associated with tampons produced by Playtex, another subsidiary of the insured parent.

The California Court of Appeal held "the products liability coverage was, in reality, a separate contract of insurance" and therefore "any misrepresentations with respect to toxic shock syndrome did not affect Columbia's liability" under the automobile coverage. *Id.* at 651. The court based its holding on three factors: (1) the policy set forth separate limits of liability for each type of coverage, for example, there was a limit for toxic shock syndrome claims separate from the limit for automobile liability, (2) each of the various risks was rated separately in calculating the total premium, and, most importantly, (3) the unique nature of the insurance, namely, that "it covered the risks created by a conglomerate of companies engaged in a myriad of activities." *Id.* at 650–51. Two of the three factors have no applicability here: there was no separate limit of liability for the fur coats and the coverage was certainly not unique. Thus, *Coca Cola* does not support the Smythes' argument.

*Wilkinson v. Standard Acc. Ins. Co.*, 180 Cal. 252, 180 P. 607 (Cal.1919), is likewise distinguishable. In *Wilkinson*, a husband and wife obtained a policy insuring their lives. After the husband died, the insurer refused to pay the widow on the ground the husband had misrepresented the wife's age. The court held "[a]ny misrepresentation respecting the beneficiary could in no manner have any effect upon the contract insuring deceased. The false statement here made was therefore a matter not material to the contract of insurance of deceased and had nothing to do with it." *Id.* at 610.

Here, in contrast, the alleged false misrepresentation is directly relevant to the coverage for the furs. According to Smythe's own testimony, Safeco would not insure his personal property, namely the Smythes' wedding and engagement rings, unless they first obtained a homeowners' policy from Safeco; the rings could then be insured under a personal property rider. The furs were later added as a personal property rider to the same homeowners' policy. The evidence shows that Safeco would not have issued the homeowners' policy—or the personal property rider—if Smythe had accurately disclosed his insurance history. Thus, the coverage for the furs cannot reasonably be considered a separate contract of insurance.

Loralei Smythe's spotless insurance history is irrelevant. She did not obtain a separate contract of insurance for her furs; instead, she obtained coverage as a rider on the policy insuring the condominium owned by her husband. Moreover, common sense dictates that the insurance histories of both spouses are material to the issuance of coverage for homes occupied by both spouses, as well as the personal property in the custody of both spouses.

## B. The Bad Faith Claim

The district court granted summary judgment on the Smythes' claim for breach of the implied covenant of good faith and fair dealing on the ground that, since there was no breach of contract, the Smythes did not have a bad faith claim as a matter of law. *See Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir.2001); *Waller v. Truck Ins. Exchange*, 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 900 P.2d 619, 639 (Cal. 1995). Since, as is explained above, there is a genuine dispute as to whether the

contract was breached, the ruling on this basis cannot stand.

 The district court's order also cannot be affirmed on the basis of the "genuine dispute" doctrine. *See Lunsford v. American Guar. & Liab. Ins. Co.,* 18 F.3d 653, 656 (9th Cir.1994). The doctrine is applied on a case-by-case basis. *See Guebara,* 237 F.3d at 994. "In some cases, the application of the rule to purely factual disputes will be inappropriate. In others, investigations by a defendant's independent experts will permit the invocation of the doctrine and summary judgment for the defendant on a bad faith claim." *Id.*

In *Guebara,* for example, after the plaintiff's house burned down, the defendant insurer immediately paid plaintiff an advance for living expenses. A week later, the insurer referred plaintiff's claim to its Special Investigations Unit because independent fire inspectors believed, based on plaintiff's statements and the evidence at the fire scene, that plaintiff had overstated the quantity and value of her destroyed belongings. The subsequent opinions of the insurer's independent experts contradicted the plaintiff's explanations about the items that could not be found at the scene. Based on the experts' opinions, the insurer denied the plaintiff's contents claim "on the grounds of misrepresentation as to the personal property allegedly destroyed by the fire." *Id.* at 989–91. We affirmed the grant of summary judgment on the bad faith claim in favor of the insurer on the ground the insurer had a legitimate basis for denying the plaintiff's contents claim. *Id.* at 995.

This is not *Guebara.* First, Safeco's rescission of the policy is not based on the opinion of independent experts, but instead is based on its own subjective belief that Smythe is lying and the agent is telling the truth.

Second, because the issue is "what was said," the telephone application was not recorded, and the written application was never sent to the Smythes for their review, there is not any independent "physical" evidence that corroborates one side or the other.

Third, viewing the evidence in the light most favorable to the Smythes, a reasonable trier of fact could find Safeco acted unreasonably. The Smythes' "story" is that after Safeco determined the loss was legitimate, it immediately began looking for a pretext to deny the claim. For example, Safeco never took the exam under oath of Loralei Smythe, even though she was the owner of and in possession of the furs when they were stolen. Instead, Safeco filed a submission with the California Department of Insurance accusing both Smythes of fraud. In sum, this case involves one of those factual disputes that is inappropriate for application of the "genuine disputes" doctrine.

REVERSED AND REMANDED.

