[Civ. No. 5525.   Third Appellate District.—June 26, 1936.]

ROSE SCHICK et al., Executors, etc., Substituted for JOSEPH SCHICK, Appellant, v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES (a Corporation), Respondent.

Charles I. Rosin for Appellant.

Newlin & Ashburn and Paul Sandmeyer for Respondent.

PULLEN, P. J.—In 1924 Joseph Schick became the insured under a policy issued by respondent, known as a "Yearly Decreasing Term Policy". This policy was continuously kept in force by the payment of annual premiums except in 1931, when the policy lapsed, but was later reinstated. With respect to that lapse the evidence shows that in 1931 the insured told respondent that he would be unable to pay the total annual premium in one payment. He was informed by the company if a person were unable to make his yearly payment in one lump sum the same could be paid over a period of six months by the payment of ten per cent on the due date, and specified on the sixth month. Appellant accepted that method of payment and paid thirty per cent of the premium due, and thereafter received a. printed form known as "Application for Extension of Time". This he signed and returned, and then for three consecutive months continued to pay the installments at the rate of ten per cent of the total amount of the premium. After the expiration of the sixth month he was informed by the company that his policy had lapsed for the reason that the rules required the balance of the premium was payable in full on the sixth month. He therefore paid the balance due on the premium, was reexamined and reinstated on the policy.

In 1932 he paid his premium in one lump sum. In 1933 he found himself unable to pay the full amount of the premium at one time and his secretary telephoned to the company at their Los Angeles office and inquired if he could pay his premiums in the same manner as he had in 1931. The substance of that telephonic conversation was testified to by Mr. Arthur, the public service clerk in the office of the respondent. A somewhat different version of this conversation is given by Mr. Schick, and also by his secretary, but the version as given by Mr. Arthur was accepted by the court as the correct statement, and on appeal we are bound by the finding of the trial court. Mr. Arthur stated that on June 26, 1933 he had a conversation over the telephone with the secretary for Mr. Schick. She referred to a policy Mr. Schick had in the Equitable and wanted to know the amount required to obtain additional time to pay the premium. The witness told her $60 would extend the premium an additional thirty days beyond the grace period, if she would send in a written request over Mr. Schick's personal signature, asking for the

extension with the remittance, which would be due June 28th, as the grace period expired upon that day. Thereafter, Mr. Schick mailed a check for $60 to the company, where it was received on June 29th. Upon the receipt of this check, which was unaccompanied by any request for an extension, the company on June 30th, sent Mr. Schick an escrow receipt covering the $60 tendered. This escrow receipt acknowledged the remittance and stated that such sum was received only for transmission to the home office in New York, and the acceptance thereof would not constitute waiver of any default. With this escrow receipt was sent a letter to Mr. Schick which also contained a printed form of application for extension and acknowledged the receipt of $60 tendered in connection with the premium due on May 28th, and further stated "if it is your wish to obtain an extension we will be pleased to grant same upon receipt of enclosed application for extension form properly signed by you".

On July 10, 1933, the home office of respondent telegraphed its Los Angeles office that no extension was to be granted appellant and that the remittance of $60 should be returned to him, which was done by letter under date of July 17th, and Mr. Schick was informed that the policy was lapsed for nonpayment. On July 17th, a letter on behalf of Mr. Schick was sent to the home office of the company in New York, which was received by it on July 21st, informing them that Mr. Schick had met with an accident which would apparently permanently disable him, and requested the necessary blanks be forwarded upon which to make proof of injury.

On July 20th, a letter was received by the company in Los Angeles from Mr. Schick, enclosing a signed application for extension which had been theretofore sent Mr. Schick June 30th, together with the voucher for $60 which the company had returned to him in its letter of July 17th. A subsequent tender of $30, claimed to be the installment due for July, was made upon behalf of Schick on July 26th, and by the company refused. This tender was not accompanied by a request for an extension, and the company was under no obligation whatsoever to grant this extension, regardless of what may have transpired as to the original extension. The rights of Mr. Schick therefore terminated in the policy on that date if they had not actually expired June 28th.

On June 29, 1933, just before midnight, and unknown to the company until several days thereafter, appellant shot himself with suicidal intent, causing the injuries which he now claims render him totally and permanently disabled.

Under these facts plaintiff brought an action for declaratory relief, asking that the policy in question be held to be in full force and effect. After trial upon the issues thus presented the court made findings and entered judgment against plaintiff, holding that the policy in question had lapsed and terminated on June 28, 1933, and had not been maintained in force after that date, and that plaintiff had no rights or benefits thereunder.

As grounds for appeal it is contended that the evidence is insufficient to support the findings, the appellant urging that he had complied with the terms of the policy; but if he had failed to comply strictly, nevertheless, appellant claims, the company had by its acts and conduct waived strict compliance with the terms of the policy.

It is the contention of appellant that the cashier in the Los Angeles office of the company had granted an extension for the payment of the premium. The policy in the possession of the insured provided, however, that agents were not authorized to modify, or in event of lapse, to reinstate the policy, or to extend the time for payment for any premium or installments thereof, and no agent, except the president, vice-president, the secretary, the treasurer or a registrar of the society had power to modify any contract or waive any requirement, and no waiver was valid unless in writing and signed by one of the foregoing officers.

In 1931, appellant had obtained five extensions, and for each extension he had filed written applications on the company's forms, and at least the first extension had been received on an official form prior to the expiration of the due date. It also appears that the rules of the company in 1931 but not in 1933, permitted the application for an extension to be made by letter to be subsequently superseded by a formal request, and in view of anything to the contrary, we must assume the rules were complied with in 1931, and that prior to default written application had been made for an extension, and therefore there was no irregularity in regard to applications for extensions in 1931.

The rules and practice of the company make it clear, however, that when an extension of time is granted, the extension is to a definite date on which the premium must be paid; it is not an agreement to pay the premium in installments, and there was not such an agreement either in 1931 or 1933. Therefore, if it can be assumed that in 1933 appellant received an extension of thirty days after the expiration of the grace period, then in order to prevent a default on June 28th, appellant would under the extension, be called upon to pay the full balance of the premiums plus interest, or make further arrangements with the company. However, unaccompanied by any application for extension, on July 25th, Schick tendered $30 only, which was promptly returned to him.

This is in accordance with the evidence before the court which found that "an annual premium in the sum of $300.00 became due and payable to defendant on said policy of insurance on the 28th day of May, 1933", which finding is amply supported by the evidence and the direct provisions of the policy of insurance. The court also found that the sum of $300 was never paid, which is admitted by appellant. The policy provides that a period of grace of thirty-one days will be granted for the payment of a premium, during which time the policy shall be kept in force, and except as provided in the policy, the payment of a premium or installment thereof shall not maintain the policy in force beyond the date when the succeeding premium becomes payable. By virtue of this provision the policy terminated automatically, without any action on the part of the company, upon non-payment of the premium on the date fixed. (*Methvin* v. *Fidelity Mutual Life Assn.*, 129 Cal. 251 [61 Pac. 1112]; *Burton* v. *Columbian National Life Ins. Co.*, 20 Cal. App. 21 [127 Pac. 1037]; *Minnesota Mutual Life Ins. Co.* v. *Cost*, 72 Fed. (2d) 519, where the termination clause is identical to that in the instant case.) As the rule is stated in 3 Couch on Insurance, page 2029, section 633: "Such an extension of time simply amounts to an agreement not to enforce a forfeiture if the premium is paid within the extended time; it postpones payment for that period, and does not constitute a waiver of forfeiture or excuse payment, although if default is made at the expiration of the period of extension the policy lapses, when the agreement so provides."

■ Also the finding that no extension of time for the payment of the annual premium due or payable on the 28th of May, 1933, was ever granted to plaintiff, is not successfully attacked. It is true an application for such extension was made, but the company claims it was never granted nor the requirement waived, and as the evidence upon that point is conflicting, we are bound to accept the finding of the trial court as final. ■ Inasmuch as the granting of an extension for premium payments is discretionary with the company, it could before granting the request, impose such conditions precedent as it saw fit. It did impose certain requirements as to a written application to be signed by the insured, a deposit of at least ten per cent of the annual premium, and that the application and the deposit must be in the hands of the company prior to the expiration of the period of grace. In all three particulars appellant herein was in default.

■ It is claimed by appellant that the company either waived or led him to believe a strict compliance with its rules would not be required, and that after he tardily sent his check for $60 the company forwarded to him an application for extension, accompanied by a letter acknowledging the remittance, stating it did not cover the premium in full and that it was being held in suspension until the company heard from him further, and also stating that if an extension was desired it would be granted upon receipt of the application therefor properly signed. At that time, however, the company did not know of the self-inflicted injury suffered by appellant, and to support a waiver the law is clear that the party against whom a waiver is claimed must have actual knowledge of all the material facts connected with the transaction. Also upon ascertaining the true facts of the conditions then existing, the company wrote to the insured notifying him that the extension was not granted, prior to the time the insured had complied with its letter.

As said in 67 Corpus Juris, 310: ''The evidence must show knowledge, at the time the waiver is claimed to have occurred, of all the material facts that would probably have influenced the conduct of the party; the proof must be clear that the party against whom the doctrine of waiver is invoked knew what his rights were. A waiver cannot be established by a consent given under a mistake of fact.''

Appellant contends that the fact that he sustained an injury after mailing the installment check is not material, and cites many cases in support thereof, as *Cotton States Life Ins. Co.* v. *Lester*, 62 Ga. 247 [35 Am. Rep. 122] ; *Carolina Life Ins. Co.* v. *Moultrie*, 40 Ga. App. 15 [148 S. E. 628] ; *Spoeri* v. *Massachusetts Life Ins. Co.*, 39 Fed. 752; *Vierra* v. *New York Life Ins. Co.*, 119 Cal. App. 352 [6 Pac. (2d) 349] ; *Vinther* v. *Sunset Mutual Life Ins. Co.*, 11 Cal. App. 118 [53 Pac. (2d) 182] ; *James* v. *Colonial Mutual Life Assn.*, 7 Cal. App. (2d) 748 [47 Pac. (2d) 362]. In most of these cases the company had accepted the overdue payments without question. Here, the company had in a similar situation two years before lapsed his policy for not making his premium payments upon the day specified, and on the particular occasion in 1933, the company had informed Mr. Schick that if he would send $60 accompanied by a written request for extension, prior to June 28th, an extension of thirty days would be granted. Appellant failed to meet these definite conditions. The remittance was not received until June 29th, and no request for an extension accompanied the delinquent payment. That a request was required by the company was an indication to the applicant the company reserved the right to grant or refuse it, the extension not being a matter of right but of grace, and if the appellant made the request so close to the expiration day, that upon a refusal, no time remained to pay the premium before the policy would lapse, only the insured is to blame.

In fact, the letter of June 30th did not state an extension had been granted, but conditionally, that is, that the company would "be pleased to grant same upon receipt of enclosed application for extension form properly signed."

█ Furthermore, the finding of the court that there was no waiver is a finding on a question of fact, proof of which rested upon appellant. (67 Cor. Jur., sec. 11; *Mott* v. *Klein*, 200 Cal. 434 [253 Pac. 718] ; *Kerr* v. *Reed*, 187 Cal. 409 [202 Pac. 142] ; *California S. H. Co.* v. *Callender*, 94 Cal. 120 [29 Pac. 859, 28 Am. St. Rep. 99].) In view of the record in this case we must accept that fact to be true.

This appeal, attacking the sufficiency of the findings that the annual premium for 1933 was not paid as required by the policy, the finding that no extension of time was granted for payment of such premiums, and the finding that there

was no waiver of appellant's default, has placed upon this court the duty of determining whether there is any substantial evidence, contradicted or uncontradicted, which will support the findings of the trial court. We have examined the record and believe substantial evidence appears in support of the findings of the court. This evidence consists of the telephonic conversation held between Mr. Arthur, an employee of the company, and the secretary of Mr. Schick, and the letters, custom and conduct of the company after June 28, 1933.

The judgment therefore should be affirmed, and it is so ordered.

Tuttle, J., *pro tem.*, and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 24, 1936.