## GELB v. AUTOMOBILE INS. CO. OF HARTFORD, CONN.

### No. 141, Docket 20847.

Circuit Court of Appeals, Second Circuit.

June 21, 1948.

Purdy, Lamb & Catoggio, of New York City (Vincent A. Catoggio, of New York City, of counsel), for plaintiff-appellant.

Bigham, Englar, Jones & Houston, of New York City (Martin P. Detels and Daniel A. Sullivan, both of New York City, of counsel), for defendant-appellee.

Before AUGUSTUS N. HAND, CLARK and WOODBURY, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an action brought in the New York Supreme Court for the total loss of the plaintiff's yacht and removed to the United States District Court. A jury ren-

dered a verdict for the defendant. Judgment was entered thereon for the latter, from which the plaintiff appeals.

Plaintiff, who resided in New York, entered into an insurance contract with the defendant, a Connecticut corporation, and a combined Hull and P. & I. Policy for $8,000 was issued to him in New York on his 47 foot light steam yacht, The Edward James. The policy contained a "perils of the sea" clause, under which plaintiff seeks recovery for a total loss, and also a winter warranty stating: "Warranted that the said yacht shall be laid up and out of commission from November 1st, at noon, until May 1st, at noon."

On September 28, 1945, the boat was left by plaintiff at Miniford Yacht Yard, City Island, New York; she was never hauled out on shore but was left afloat moored to two dolphins about 500 feet off shore in open water until November 29th, when she sank. The plaintiff removed the ship's papers, compass and personal belongings and turned the keys over to the boat yard, but evidently such other things relating to laying up a yacht for the winter —as disconnecting or removing the batteries, removing water from the bilges, pumps, motors or tanks, and draining the gasoline—were not done. The night the yacht sank there were heavy seas and a northeaster, and there is evidence the yacht probably broke loose from her mooring and hit a barge tied up astern of her.

The defendant contends that it was relieved from any liability on the policy because of a breach of the warranty to lay the boat up and out of commission by plaintiff's failure to haul her up on shore or to perform other customary acts in storing the boat for the winter which we have mentioned. The defendant offered evidence in support of its defenses tending to establish a custom or practice to take the foregoing steps in laying up a boat of the type of the Edward James for the winter. Such evidence to interpret the meaning of a term used in a contract is undoubtedly competent. Parties are presumed to contract with reference to general customs and usages which explain the specific meaning of a term used and personal knowledge of the customary meaning need not be had by the parties to the contract. Williston on Contracts (Rev.Ed.) § 661; Couch on Insurance (1929 Ed.) § 192. Moreover where, as in the present case, such meaning of a phrase in a marine policy is known to the broker, who is an agent for the insured, it is sufficient to bind the latter. Connecticut Fire Ins. Co. v. Davison Chemical Corporation, D.C.Md. 54 F.Supp. 2; Eagle Star & British Dominions v. Tadlock, D. C.S.D. Calif., 22 F.Supp. 545, 548, affirmed sub nom. Walsh v. Tadlock, 9 Cir., 104 F.2d 131, certiorari denied 308 U.S. 584, 60 S.Ct. 107, 84 L.Ed. 489.

It is evident from the above that the court properly refused plaintiff's request to charge that if the ordinary meaning of a term is to be changed by local custom, then plaintiff must be proven to have knowledge of the local custom. The evidence of custom was not introduced by the defendant to change the meaning of the words "to lay up and out of commission" for the winter, but to explain their meaning so that they were capable of application to the facts of the situation. The evidence of custom which was introduced by the defendant tended to show that these words meant that the owner should put his boat up permanently in some unexposed place and with care for the protection of both the boat and her equipment. In the particular area where plaintiff's yacht was left, there is evidence that the customary procedure for laying up such a boat was to haul her on shore rather than to leave her afloat. There was also evidence that it was the custom to perform such acts with regard to the batteries and draining the equipment as we have mentioned.

The objections to the exclusion of the proof of clauses in two other policies which expressly stated that the boat must be laid up "on shore" were properly overruled. This is so not only because one of the policies was of another company but for the additional reason that even in the case of the defendant's prior policy there was no proof that the vessel involved or

her situs were comparable with the facts determining the risks covered by the policy issued to plaintiff. In other words, the particular requirement for winter storage found in the two policies offered by the plaintiff was or might have been mitigated as to a boat like plaintiff's in order to permit storage afloat in a properly sheltered place. However, if the defendant's evidence be believed, the berth in which the Edward James was left did not fulfill this condition.

■ The plaintiff makes the further objection that the judge left to the jury the question whether the lay-up of the Edward James for the winter was negligent and argues that the test of reasonable care had no bearing on whether the vessel was laid up for the winter in accordance with the meaning of those words in the policy. In the first case, we think that the requirements of the alleged custom to place the boat on shore or in an unexposed place are inescapably linked with a proper care for the safety of the vessel, and if the latter in any way differs from the standard required by custom it was less precise and exacting. In other words, the charge as delivered, if it varied in any way from one directed to custom, was not prejudicial and indeed might well have been beneficial to the plaintiff. Moreover, the latter made no objection to the charge as rendered.

■ It is argued in respect to the defense of breach of warranty that there must be proof of a causal relation between any such breach and the loss which occurred. No such objection was made by the plaintiff to the submission to the jury of the question whether there was a breach of warranty relieving defendant from liability, and there have been decisions in this court interpreting the common and statutory law of New York holding that proof of a causal relation is not required where there has been such a breach of a warranty in a marine policy as defendant's evidence indicates had occurred here. Levine v. Aetna Ins. Co., 2 Cir., 139 F.2d 217; Shamrock Towing Co. v. American Ins. Co., 2 Cir., 9 F.2d 57, 60.

For the foregoing reasons the judgment is affirmed.