**MERCHANTS FIRE ASSURANCE CORPORATION, Appellant,**

v.

**Ann E. LATTIMORE, Appellee.**

**No. 15692.**

United States Court of Appeals
Ninth Circuit.

Jan. 5, 1959.

Derby, Cook, Quinby & Tweedt, Stanley J. Cook, San Francisco, Cal., for appellant.

Reginald G. Hearn, San Francisco, Cal., for appellee.

Before HEALY, POPE, and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

In this action, Miss Ann E. Lattimore, the insured under a policy of personal property insurance, recovered judgment against the insurer in the sum of $17,034. Of this sum $7,084 was for loss in connection with the disappearance of, or damage to, scheduled fine arts. The remaining $9,950 was for loss due to the disappearance of, or damage to, unscheduled personal property covered by a personal property floater provision of the policy.[1]

Appealing to this court, defendant, Merchants Fire Assurance Corporation, contends that with regard to the scheduled fine arts the trial court should have found the loss to be $4,339.45 instead of $7,084. Concerning the $9,950 loss relating to unscheduled personal property,

the company contends that it should have been relieved from all liability on its defense of concealment and misrepresentation of a material fact.

We will first consider the issues pertaining to that part of the award having to do with scheduled fine arts.

Under the policy, scheduled fine arts were insured by an endorsement which listed and described 131 objects of art. Each such item was separately valued at a specific figure and insured for that amount. The company concedes that items of scheduled fine arts with a total value of $2,269 were completely lost. It also concedes that other items of scheduled fine arts having a total value of $4,815 were damaged.

It is the company's position that the loss on these damaged items was only partial and did not exceed $2,070.45. The court, however, found and concluded that as to these damaged items Miss Lattimore had sustained a total loss of $4,815. The amount in dispute on this branch of the case is therefore $2,744.55.

Appellant argues in effect that the finding of fact upon which the trial court predicated its conclusion that a total loss was sustained as to these damaged fine arts is clearly erroneous. This finding of fact reads as follows:

"XI. An object of art, unless a masterpiece and unique, loses its full insurable value when it is damaged and ceases to be an object of art. Consequently, plaintiff has sustained a loss in the amount of $4,815 relative to the damaged articles of personal property." [2]

This finding is based upon the testimony of Benjamin W. Langman, a witness called by Miss Lattimore. He qualified as an expert on fine arts, as appellant concedes, and was the only such expert to testify at the trial.

1. Under the judgment, the damaged objects of art were awarded to the company as salvage.

2. While the trial court did not explicitly find that none of the objects of art here in question were masterpieces or unique, such a finding is implicit in the quoted finding of fact. There is substantial evidence to support this finding.

Langman testified that where an art object is an original, or unique, it does not necessarily lose its entire value when damaged. If properly restored, it may even resume its original value and in the course of time have a still greater value. This is not true, Langman stated, in the case of art objects which are not originals or unique. Art objects of the latter kind, he indicated, lose their identity as such when damaged even to a minor extent.

As an example, Langman referred to porcelains produced in limited numbers from the same mold, with the mold still in existence. If one such porcelain art object were damaged and then repaired, however skillfully, it would no longer be an object of art, according to Langman. It would be only a "restored piece of porcelain." As such, the article would have "no value," "a relatively small value," or "some sub-value," as the witness expressed it during the course of his examination.

Most of Miss Lattimore's scheduled art objects which were damaged were porcelains, although there were also items of furniture, cloth, candelabra, goblets, and decanters. None of these scheduled items, according to Langman, was an original or unique. He testified that for the most part the damage was "rather severe," and that some objects were smashed into small pieces. The damage to some objects was relatively minor and could not be detected six feet or more away. Some of the damaged articles were capable of physical repair. With a few exceptions, however, no attempt had been made to repair any of them.

Appellant argues that the court should not have accepted this testimony as a basis for a finding that the damaged articles had lost all value. The company complains that in expressing the opinion that a damaged object of art (other than one which is an original or unique) is no longer an object of art, however skillfully it is repaired, Langman adopted a subjective approach. This is unacceptable in fixing insurance liability, it is argued, and only an objective appraisal is worthy of consideration. On an objective basis, appellant urges, there can be no "total loss" where the piece is not physically destroyed in specie, and still retains monetary value.

Langman's opinion that an object of art which is damaged is no longer an object of art doubtless reflects a subjective approach. But the taste for and enjoyment of art—and hence the value to be attached to objects of art—call for an appreciation of aesthetic and other subjective values. It must therefore be expected that the loss occasioned by such damage as was here sustained would be measured by the same considerations which gave the art object initial value. The testimony was not as to the value of these objects to Miss Lattimore, but that which they would have for anyone trained to appreciate such art. Moreover, having determined that the damaged articles were no longer objects of art, Langman was objective in his estimate of the monetary value of what remained. In the absence of any more objective or persuasive evidence of value or loss, his testimony was sufficient.

Appellant argues further that in view of other evidence in the record Langman's opinion as to the value of repaired pieces should not have been accepted. As before noted, there was no other expert testimony on the subject. Appellant calls to our attention, however, the evidence pertaining to a formula which, in the initial stages of this controversy, was utilized in assessing Miss Lattimore's loss.

Immediately after the loss was discovered, Miss Lattimore engaged Langman to act for her in ascertaining and adjusting the amount of loss. In order to arrive at an over-all figure covering this loss, Langman and the company's adjuster employed a formula under which a flat ten per cent of insured value was allowed for repairs, and an additional 33⅓ per cent for depreciation remaining after repairs. This formula was selected as a means of avoiding a separate appraisal of each damaged item. Such a formula is

frequently used in arriving at a loss figure in cases of this kind.

The formula referred to above was thereafter used by Miss Lattimore's brokers in presenting this part of the claim under the policy. At that time the company had not denied liability on the loss relating to unscheduled items. After such liability was denied, the formula basis for calculating the claim was abandoned by Miss Lattimore, and she adopted her present position that such damaged items were a total loss.

The trial court in its memorandum opinion indicated that the evidence relative to the formula arrangement was disregarded because it was considered to be in the nature of an offer of compromise settlement.[3]

■ Appellant correctly points out that at the time this formula was developed the company had not denied liability as to any part of the loss and no overall dispute had yet developed. Miss Lattimore and her advisers, however, were people with wide business experience. They should be credited with judgment enough to realize that a controversy might well develop with regard to other features of the claim. In this setting, tentative acquiescence in the loss figure derived by use of the formula did not necessarily manifest appellee's detached view of her true and full loss. It more than likely represented only a willingness to go part way with the company on that portion of the claim, in the hope that this would promote an amicable settlement of the remainder.

The filing of a partial claim based on the formula did not preclude adoption of a firmer position when the hope of avoiding litigation was disappointed. As fact finder, the trial court under these circumstances was not required to reject the opinion evidence of Langman in favor of the formula-determined claim of loss.

■ No evidence as to market value, unless it be that of the scheduled appraisal set out in the policy, was submitted in evidence. The only art expert who testified placed a minimal or salvage value on the damaged items, not expressed in dollars and cents. The company submitted no evidence other than the formula, which the court was entitled to discount. Under the circumstances, the court did not err in crediting the testimony of the expert and awarding the company the damaged articles as salvage.

If the damaged items do prove to have substantial value, the company should come out whole. But, on this record, it was proper for the trial court to put this risk on the company and not the insured.

The remaining questions relate to that part of the judgment which awards $9,950 for loss of, or damage to, unscheduled items of personal property.

The claim of loss in the sum of $9,950 was made under a personal property floater provision of the policy. This provision gave Miss Lattimore all-risk insurance coverage in that amount on unscheduled personal property. It was conceded at the trial that loss and damage to unscheduled property equaled or exceeded the insurance limit of $9,950. Hence, it is agreed, if appellee is entitled to recover at all on this part of the claim, she is entitled to recover the full $9,950.

As noted at the outset of this opinion, the company denies all liability on this part of the claim, on the ground that in obtaining this insurance coverage appellee concealed or misrepresented a material fact.[4] The trial court rejected this contention and allowed appellee to recov-

3. The court said: " * * * The settlement formula he [Langman] advanced was significant only as a factor, or possible basis, for compromise of the claim. The formula proposed on settlement cannot be used as a yardstick of value, to be applied by this court, after litigation ensues of an expensive and protracted nature. * * * "

4. The first paragraph of the policy under the heading "Conditions" reads: "This policy shall be void if the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Assured touching any matter relating to

er the full $9,950. Appellant contends that this ruling is based upon clearly erroneous findings of fact and incorrect legal conclusions.

The material concealment or misrepresentation upon which appellant relies has to do with the declarations which Miss Lattimore made in paragraph 4 of the policy concerning "the unscheduled personal property." Appellant argues that in this paragraph the insured was called upon to declare the approximate value of all the unscheduled personal property which she owned.

The value which she declared in this paragraph under five of the fifteen listed categories of property was $9,950.[5] At the trial it was stipulated that when the policy was issued, and for many years prior thereto, the actual value of the unscheduled property was at least $36,500. The insured thus failed to disclose that, in addition to the property declared in paragraph 4, she owned unscheduled personal property of the approximate value of $27,000.

In determining whether the failure to disclose this information constitutes the kind of "concealment" which warrants avoidance of liability, we turn first to the West's Ann.California Insurance Code.[6] Under § 330 of that code,

this insurance or the subject thereof, whether before or after a loss."

This provision in effect carries into the insurance contract the applicable sections of the West's Ann.California Insurance Code referred to in this opinion. Section 331 of that code provides: "Concealment, whether intentional or un-intentional, entitles the injured party to rescind insurance."

5. The pertinent part of paragraph 4 as filled in reads as follows:
"4. The following are the approximate values of the unscheduled personal property, other than jewelry, watches and furs, as estimated by the Assured, at the time of issuance of this policy:

Wherever Located

| | | |
|---|---|---|
| (a) | Silverware and pewter | $3,000.00 |
| (b) | Linens (including dining room and bedroom) | $ 500.00 |
| (c) | Clothing (Men's, Women's, Children's) | $5,000.00 |
| (d) | Rugs (including floor coverings) and draperies | $ Nil |
| (e) | Books | $ Nil |
| (f) | Musical Instruments (including pianos) | $ Nil |
| (g) | Television sets, radios, record players and records | $ Nil |
| (k) | Paintings, etchings, pictures and other objects of art | $1,000.00 |
| (h) | China & Glassware (including bric-a-brac) | $ Nil |
| (i) | Camera & Photographic equipment | $ Nil |
| (j) | Golf, hunting, fishing and other sports & hobby equipment | $ Nil |
| (l) | Refrigerators, washing machines, stoves, electrical appliances and other kitchen equipment | $ Nil |
| (m) | Bedding (including blankets, comforters, covers, pillows, mattresses, and springs) | $ Nil |
| (n) | Furniture (including tables, chairs, sofas, desks, beds, chests, lamps, mirrors, clocks) | $ Nil |
| (o) | All other personal property (including wines, liquors, foodstuff, garden and lawn tools and equipment, trunks, traveling bags, children's playthings, miscellaneous articles in basement and attic) and professional equipment, if any, covered under paragraph 7(b) | $ 450.00 |
| | Total | $9,950.00" |

6. Miss Lattimore is a resident and citizen of California. The company is a New York corporation. Jurisdiction of the district court was based on diversity of citizenship. 28 U.S.C.A. § 1332. The contract was made in California. California law therefore governs.

"neglect to communicate that which a party knows, and ought to communicate, is concealment."

■ Miss Lattimore either had personal knowledge of the approximate value of all the unscheduled personal property owned by her, or is charged therewith by reason of the knowledge of her agents Langman and Raymond Armsby.[7] She is consequently presumed to know the approximate value of the portion thereof which was not declared in paragraph 4. It remains to be determined whether, within the meaning of § 330, this was information which appellee "ought" to have communicated to the company.

■ A party to an insurance contract "ought" to communicate to the other at least such information as he is under a statutory duty to communicate. Section 332 of the West's Ann.California Insurance Code requires the parties to such a contract to disclose certain facts. The section reads:

"Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract. * * *"

As we have already indicated, the facts concerning the approximate total value of all unscheduled personal property owned by Miss Lattimore were within her knowledge, or that of her agents. Miss Lattimore, who testified at the trial, did not explicitly state whether at the time the contract was entered into she believed that information as to the value of all her unscheduled personal property was material to the contract. Nor did the trial court make an express finding of fact as to this. But the court noted in its findings that the policy conveyed no explicit information as to the materiality of the declaration to be made in paragraph 4.

These and other more general findings of fact may have been intended to reflect an implicit finding that when the contract was negotiated Miss Lattimore had no reason to believe that this information was material to the contract. We will so assume.

■ Belief in the materality of the withheld facts, as referred to in § 332, is satisfied, however, if an authorized agent of the contracting party held such belief. This follows from the general rule which charges an insured with the knowledge and acts of his agent. See Gelb v. Automobile Insurance Co., 2 Cir., 168 F.2d 774. Armsby testified, without contradiction, that he was aware of the facts and circumstances which made such information material to the contract.[8] In view of her broker's awareness of the materiality of the information in question, Miss Lattimore had a duty under § 332 to communicate that information to appellant.

■ But even if it be supposed that Armsby was not aware of the materiality of these facts, the same result must be reached. Section 332 placed upon Miss Lattimore the duty to communicate ma-

7. The court made no finding as to whether Armsby was Miss Lattimore's insurance broker. In answer to interrogatories prior to trial, counsel for appellee acknowledged that Armsby was her broker. Armsby and other witnesses also so testified at the trial. There was no evidence to the contrary. Section 33 of the West's Ann.California Insurance Code defines "broker" as one who transacts insurance "on behalf of another * * * with, but not on behalf of, an insurer."

Appellee suggests that the trial court did not believe Armsby because he had been discharged as Miss Lattimore's broker prior to the trial. There is no finding of fact or other record reference to support this suggestion. Armsby testified in response to a subpoena. His testimony was not self-contradictory or inherently improbable, nor was it disputed. He was an experienced insurance broker. Several other insurance men testified that they, too, were aware of the materiality of such information. No insurance man testified that he was without this knowledge. Under these circumstances, we accept as a fact that when the contract in question was entered into, Miss Lattimore's broker believed that information regarding the total approximate valuation of all unscheduled personal property owned by the insured was material to the contract.

terial facts to appellant regardless of whether she or her broker believed them to be material. This is made clear by the disjunctive "or" in the phrase of § 332 reading " * * * which *are* or which he believes to be material to the contract * * *." (Emphasis supplied.)

Application of this alternative provision, which does not require belief as to materiality, is dependent upon whether the undisclosed facts as to value were in fact material to the contract. There are three tests which the courts employ to determine the materiality of undisclosed facts. The test most frequently applied is whether a fact is regarded as material by all similar insurers.[9] A second test is what a reasonable and prudent insurer would regard as material.[10]

The third test is whether the particular individual insurer regarded the undisclosed facts as material to the contract. This test looks only to the evidence concerning the attitude or practice of the insurance company involved in the suit. The courts of California have determined that under § 334 of the West's Ann.California Insurance Code [11] they are required to adopt this third test

in determining the materiality of concealed or misrepresented facts.[12]

The trial court made no finding as to whether the fact of total approximate value of the unscheduled personal property owned by Miss Lattimore was material to the contract. Appellant, however, submitted considerable evidence to the effect that under its practice, and also under the practice of similar insurers, this fact was material. Thus, appellant produced evidence which, under either the stringent California rule or the more generally used first test mentioned above, tended to show materiality.

According to this testimony, the reason why the fact of total approximate value of all such property owned by the insured is material is that it definitely affects the risk assumed. As the witnesses giving this testimony explained it, most losses under a personal property floater are partial rather than total, but the risk of partial loss increases with the total value and amount of property owned. The chance of a $2,000 loss occurring is thus much greater in the case of a person who owns $50,000 worth of property than in the case of one who owns only $2,000 worth.[13]

---

9. John Hancock Mutual Life Ins. Co. v. Conway, Ky., 240 S.W.2d 644; Patterson, "Misrepresentation by Insured under New York Insurance Law," 44 Col. L.Rev. 241, 248.

10. Standard Accident Ins. Co. v. Walker, 127 Va. 140, 102 S.E. 585. Both of these tests reflect the rule of contract law that the materiality of facts which are misrepresented depends on whether the misrepresentation would affect the conduct of a reasonable man. See Restatement, Contracts, § 470.

11. Section 334 reads as follows: "Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries."

12. Robinson v. Occidental Life Ins. Co., 131 Cal.App.2d 581, 281 P.2d 39; Cohen v. Penn Mutual Life Ins. Co., 48 Cal. 2d 720, 312 P.2d 241.

13. There was testimony to the effect, and appellant concedes, that a declaration of value is not to be regarded as a warranty. An insurance man, called as a witness by appellant, testified that "companies generally like to get about eighty per cent insurance to value." It is true that he further testified: " * * * I have seen any number of cases where the declaration, for example, might show $2,000 estimated value for clothing, and when loss finally overtakes the assured there might be $3,000 [or] $4,000 in value of clothing. Now, if that $4,000 falls within the limit of liability for the unscheduled items there is no question of the company not paying the loss." This testimony did not relate to any practice of appellant. In any event, the decision of a company to be lenient, once a loss has occurred, does not mean that it would have entered into the contract on the terms stated had it known the facts which were concealed.

Because of this, it was uniformly testified, it is customary for companies writing such insurance, and appellant in particular, to ask that the insurance coverage be not less than eighty per cent of the total value of the property owned. Hence, had it been disclosed to appellant that the approximate value of all unscheduled personal property owned by Miss Lattimore was $36,500, appellant would have insisted on a coverage of at least $29,200. The premium on such a coverage would have been $548.02, instead of the actual premium of $316.89.

As against this evidence of materiality, appellee calls attention to other evidence which, in her view, shows that the undisclosed fact was not material. One such item of evidence relates to a letter which appellee's broker wrote to appellant's issuing agent in July 1950. In this letter it was stated that certain personal property was stored in a named warehouse. Among the items of property referred to was "household furniture." Appellee argues that this letter put appellant on notice that Miss Lattimore owned some furniture— hence knew that the declaration of "nil" for furniture in the policy then in effect was wrong. In spite of this knowledge, the company entered into the contract, thereby indicating, so appellee contends, that the total value of property owned was not considered to be a material fact.

The fact is, however, that the policy then in effect had no separate item declared as value of furniture. It follows that the 1950 letter did not show any inaccuracy whatever in the 1949 declarations. In the 1950 form, used after this letter was sent, a category of furniture was added for the first time. It was contained in the 1952 form involved in this suit. It is apparently appellee's view that the 1950 letter should have put the company on notice in 1952 that Miss Lattimore had some furniture.

We do not believe that either lack of materiality or estoppel can be shown by a process of reasoning as speculative as this. Moreover, appellee or her broker had been in possession of the 1952 policy

for three years and had never advised appellant that the "nil" declaration on furniture was erroneous. Appellee thereby adopted and confirmed the declarations just as if she had personally repeated them to the insurer. Telford v. New York Life Ins. Co., 9 Cal.2d 103, 69 P.2d 835.

Another item of evidence upon which appellee relies to show that the fact of total value was not material has to do with a clothing loss in 1950. This was a loss of $2,800, at a time when the declaration in the 1949-52 policy stated only $2,000 for clothing. Despite this declaration, the full claim of $2,800 was paid.

At the time of this incident, the total value declared was $6,950, and the unscheduled insurance was $5,578. After paying the loss, appellant's agent suggested to Miss Lattimore's broker that perhaps the values and the insurance were too low. As a consequence, the declaration on clothing value was increased from $2,000 to $5,000. It therefore appears that when an under-declaration came to the attention of appellant, the insured was requested to raise the declaration, and this was done. We find nothing in this incident to indicate that appellant did not regard the declaration of total value material.

Several other items of evidence are also called to our attention, each of which has been carefully examined. We do not find that any of them has a tendency contrary to the overwhelming evidence that the undisclosed fact was material to the contract.

It would therefore appear that, either because of Armsby's belief that such information was material or because, in any event, it was material, appellee had a statutory duty under § 332 to communicate this information to appellant. Her neglect to do so, unless otherwise excused, was therefore "concealment" within the meaning of § 330. This, under the terms of the contract and of § 331 of the West's Ann.California Insurance Code (see footnote 4) would seem to void the policy.

But appellee contends that she is to be excused for failing to disclose total value of property owned because, in her view, the declaration form contained in paragraph 4 of the policy did not plainly call for a statement of approximate value of all unscheduled personal property owned by Miss Lattimore. In this connection it is pointed out that there was not, in that paragraph or elsewhere in the policy, any reference to the company's eighty per cent practice referred to above. It is argued that it was reasonable for her to believe that all that was called for by this provision was a declaration as to that part of her total property which she desired to have protected by insurance. Appellee contends that it was pursuant to this belief that a declaration of $9,950 was entered in paragraph 4.

The trial court did not enter an express finding to the effect that Miss Lattimore or her broker understood that paragraph 4 called only for a declaration of the value of property sought to be protected by insurance. If such a finding is implicit in other general findings, it is clearly erroneous. Miss Lattimore did not so testify. As a matter of fact, she testified that when in 1946 she examined a predecessor policy containing a similar paragraph of declaration, "I thought it covered whatever belongings I had." In any event, her then broker, Armsby, made it clear that he knew that all property owned was to be declared. The fact that the policy makes no reference to the company's eighty per cent practice is immaterial, since appellee's broker was aware of that practice.

That appellee, or at least her broker, did not so construe the declaration provision is also indicated by the fact that her claim against the company is not limited to the categories of property for which she declared a value. See footnote 5. She had no clothing loss, and only $525 was claimed on silverware and pewter. Adding this figure to the valuations declared on three other categories, only $2,475 insurance coverage would be available to satisfy appellee's claim. Yet her claim was for $9,950, the full amount.

A claim in this amount would be justified only if the $9,950 coverage specified in paragraph 3(a) on "unscheduled personal property" meant coverage to this extent on all the personal property which Miss Lattimore owned. But if those words had that meaning in paragraph 3(a), they must also have had that meaning in paragraph 4.

Appellee makes an additional argument grounded upon the theory of waiver and estoppel. In the main, this argument is based upon items of evidence which have already been referred to in discussing the question of materiality. The principal additional item of evidence bearing upon this point relates to a form of questionnaire which appellant began using in 1950. The facts as to this matter are summarized in a finding of fact which we quote in the margin.[14]

This is not a case where the company had conducted an independent investigation by reason of which it became aware of some falsity. DiPasqua v. California Western States Life Ins. Co., 106 Cal.App.2d 281, 235 P.2d 64. In California an insured may not escape the consequences of his deception by placing on the insurer the burden of investigating his verified statements. Robinson v. Occidental Life Ins. Co., 131 Cal. App.2d 581, 281 P.2d 39.

One of the essential elements of estoppel or waiver in an insurance case is knowledge of the pertinent facts. Rizzuto v. National Reserve Ins. Co., 92 Cal.App.2d 143, 206 P.2d 431. A waiver

14. "In the year 1950 the defendant commenced using a questionnaire relative to personal property floater insurance policies which among other things stated to the applicant that there must be a declaration of at least 80% of the estimated value of all personal property owned by the insured. Notwithstanding the fact that subsequent to the commencement of the use of said questionnaire by defendant, defendant renewed plaintiff's personal property floater insurance policy and at no time did defendant request plaintiff or plaintiff's representatives to complete or otherwise fill out the aforesaid questionnaire."

cannot be established by a consent given under a mistake regarding essential facts, or in ignorance of the facts the effect of which is claimed to have been waived. See California-Western States Life Ins. Co. v. Feinstein, 15 Cal.2d 413, 101 P.2d 696, 131 A.L.R. 608; Schick v. Equitable Life Assur. Soc., 15 Cal.App. 2d 28, 59 P.2d 163. Mere cause for suspicion is not a substitute for knowledge. Gates v. General Casualty Co., 9 Cir., 120 F.2d 925.

It is our conclusion that, both as a matter of fact and law, appellant established the defense of concealment, entitling it to void the personal property floater provision of the policy. This being the case, it is unnecessary to discuss the facts and law relative to appellant's defense based on asserted misrepresentation of a material fact.

The judgment is reversed and the cause is remanded with directions to enter judgment for appellee in the sum of $7,084, with interest, and costs, as provided in the original judgment, additionally increased in a sum equal to the premium paid for the personal property floater, with interest thereon. Appellant will recover its costs on this appeal.