Anne E. Lattimore v. Commissioner.
Lattimore v. Commissioner
Docket No. 85037.
United States Tax Court
T.C. Memo 1962-75; 1962 Tax Ct. Memo LEXIS 233; 21 T.C.M. (CCH) 393; T.C.M. (RIA) 62075; April 4, 1962
*233 Held: This Court has no jurisdiction to rule upon claims for refund for any year for which a deficiency has not been determined. Petitioner discovered in 1955 a claimed casualty loss, the insurance recovery on which was not determined until 1959. Held: petitioner has failed to demonstrate that the loss is deductible in 1956, the only year before us for which respondent has determined a deficiency. Reginald G. Hearn, Esq., 351 California St., San Francisco, Calif., for the petitioner. Donald G. Daiker, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined a deficiency of $731.25 in petitioner's 1956 income tax. Findings of Fact Some facts were orally stipulated to at the trial and are hereby found as stipulated. Petitioner is an individual with a mailing address of Mills Building, San Francisco, California. Her 1956 return was filed with the district director of internal revenue, San Francisco, California. Petitioner, in 1955 and for many years prior thereto, was a collector of objects of art. In 1948 or 1949, petitioner had her household belongings stored with Bekins Van & Storage Co. (hereinafter sometimes referred to as "Bekins") *234 in San Francisco, California. By letter dated December 19, 1952, petitioner authorized Robert Borland (hereinafter sometimes referred to as "Borland") to take from Bekins' warehouse "such articles of silver and China belonging to petitioner as he may select." On or about December 19, 1952, Borland removed from Bekins' warehouse to his home 18 barrels and 8 T-boxes of goods held for the account of petitioner. Upon opening one of the T-boxes, Borland determined that the items therein were well packed and in good condition. The 18 barrels were very poorly packed and a tremendous amount of breakage was discovered. Borland and petitioner unpacked all the barrels, discarded the breakage, removed some other items, and tried to do a proper job of repacking that which remained. As a result, the items that were originally in 18 barrels were repacked in 13 barrels. On April 14, 1953, Bekins picked up at Borland's residence and delivered to its warehouse for the account of petitioner the 13 barrels and 8 T-boxes. By letter dated October 17, 1955, petitioner ordered Bekins to have all her stored furniture, except a dining room set and bed, delivered to her hotel at 10 A.M. on October 25, 1955. Petitioner's *235 apartment at the hotel consisted of one room used as a bedroom, living room, and small kitchenette, and was approximately 20 feet wide and 30 feet long. Petitioner was not present at the unpacking of the goods. On petitioner's return to her apartment, on or about October 28, 1955, she discovered that a substantial amount of her property was damaged. Shortly after petitioner discovered the damage, she requested an art appraiser to inspect the objects and estimate the extent of the damage. The parties have agreed that the difference between the fair market value of the property before the destruction and the fair market value afterward was $26,000. The salvaged items have an agreed value of $732.13. After litigation, [1] petitioner recovered by way of insurance $7,084. Petitioner's net economic loss was $18,183.87. [2] *236 Respondent's deficiency notice stated: In making this determination of your income tax liability, careful consideration has been given to your protest dated February 19, 1959; to the statements made at the conference held on April 13, 1959; and to your claim for refund filed on October 10, 1957. The issue raised in your claim for refund with respect to allowable non-business deductions other than the net operating loss deduction has been allowed herein. However, the adjustment for the net operating loss deduction results in a deficiency. If a petition is not filed, a statutory notice of disallowance of your claim for refund will be forwarded to you in accordance with the provisions of section 6532 of the Internal Revenue Code of 1954. *237 * * *
(a) The deduction of $7,317.82 claimed as a net operating loss deduction for 1956 is disallowed because you have not established that you are entitled to such a deduction. Opinion The petitioner describes the amounts here in dispute as follows: The deficiency as determined by the Commissioner relates to income taxes for the calendar year 1956 in the amount of $731.25 and the disallowances of claims for refund relate to the taxable years 1953 in the sum of $2,223.09 and 1954 in the sum of $1,458.02 and an additional disallowance of claim for refund for the year 1955. The entire amounts as aforesaid are in dispute. This Court's jurisdiction depends upon a timely petition for redetermination (section 6213 [3]) of a deficiency (section 6211) determined by respondent and noticed to the taxpayer (section 6212). Although we may consider facts with relation to other years insofar as they may be necessary to a proper redetermination of the deficiency so noticed, we are without jurisdiction to determine whether or not the tax for any other year has been overpaid or underpaid. Section 6214(b). The *238 deficiency notice herein determined a deficiency for 1956 only. Accordingly, we are without jurisdiction in this proceeding to make any determination with regard to petitioner's claimed refunds for 1953, 1954 and 1955. See, e.g., Robert J. Dial, 24 T.C. 117, 125 (1955). Both parties have framed their dispute in terms of whether the loss suffered by petitioner is properly deductible as a casualty loss under the appropriate provisions of section 165. [4]
Petitioner contends the loss occurred *239 in 1955 and that the extent of the insurance reimbursement was not known until 1959. Respondent suggests the loss may have occurred prior to 1955. The parties also disagree as to the cause of the loss and whether any given cause would qualify as a deductiable "casualty" loss. Finally, they disagree as to the effect of petitioner's failure to prove the amount of her basis in the property. Petitioner's counsel stated at the trial that the petition is "predicated primarily upon claims for refund for the years 1953, 1954 and 1955." Neither party has indicated to us why the loss, if it is deductible at all might be deductible in 1956. There is a reference in the record to a net operating loss, but we note that the applicable provisions of section 172 [5] *240 *241 make a net operating loss carryover depend upon the taxable income of the year of the loss and of prior years. Neither party has stipulated or submitted evidence into the record which would enable this Court to determine the amount of any such net operating loss carryover deductible during the only year before us. Petitioner argues eloquently that fair play requires that a conceded economic loss be deductible. We express no opinion on the merits of this contention except to suggest she direct her argument to the Congress. We recognize an obligation to be astute to discover the relevant import of the parties' arguments. Compare J. C. Penney Company, 37 T.C. - (March 6, 1962) with Diversified Services, Inc. v. United States, 192 F. Supp. 571 (S.D.Fla., 1961) (on appeal to C.A. 5). However, even if we were to agree with petitioner's view of the disputed facts, petitioner has wholly failed to demonstrate how the statutory language set forth hereinabove, or any other that might be applicable, could justify redetermination of the deficiency determined by respondent in petitioner's 1956 income taxes. On the state of the record as described above we conclude that we must leave the parties as we find them. Decision will be entered for the respondent. Footnotes
1. Reported at 151 F. Supp. 396 (N.D. Cal. 1957) and 263 F. 2d 232↩ (C.A. 9, 1959). 2. In his proposed findings of fact, counsel for respondent sets forth that part of petitioner's appraiser's report valuing the loss to the damaged and destroyed property at $15,910, and makes no mention of $10,090 worth of items listed in the same report as missing. He then notes that petitioner's economic loss must be reduced by the amount of $7,816.13. We gather from this the implied suggestion that petitioner's economic loss amounted to $8,093.87. However, respondent's counsel does not state that he repudiates his oral stipulation at trial that the net economic loss amounted to $18,183.87. We will not treat his proposed findings as a new contention that petitioner suffered no economic loss by virtue of the disappearence of $10,090 worth of art objects.
3. All statutory references are to the Internal Revenue Code of 1954, unless indicated otherwise.↩
4. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) Amount of Deduction. - For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * *
(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * *.↩
5. SEC. 172. NET OPERATING LOSS DEDUCTION. (a) Deduction Allowed. - There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year. For purposes of this subtitle, the term "net operating loss deduction" means the deduction allowed by this subsection. (b) Net Operating Loss Carrybacks and Carryovers. - (1) Years to which loss may be carried. - A net operating loss for any taxable year ending after December 31, 1953, shall be - (A) a net operating loss carryback to each of the 2 taxable years preceding the taxable year of such loss, and (B) a net operating loss carryover to each of the 5 taxable years following the taxable year of such loss. (2) Amount of carrybacks and carryovers. - Except as provided in subsection (f), the entire amount of the net operating loss for any taxable year (hereinafter in this section referred to as the "loss year") shall be carried to the earliest of the 7 taxable years to which (by reason of subparagraphs (A) and (B) of paragraph (1)) such loss may be carried. The portion of such loss which shall be carried to each of the other 6 taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which such loss may be carried. * * *