137 F.3d 1169
 1998 A.M.C. 1239, 98 Cal. Daily Op. Serv. 1601,
98 Daily Journal D.A.R. 2243
 C.N.R. ATKIN; Commercial Union Assurance Co.; Aegon
Insurance Company (UK) Ltd.; Indemnity Marine Assurance Co.
Ltd.; Maritime No. 1 Acct; The Yorkshire Insurance Co.,
Ltd.; Northern Assurance Company Of America; Ocean Marine
Insurance Co. Ltd., Plaintiffs-counter-defendants-Appellees,
v.
William SMITH, Defendant-counter-claimant-Appellant.
 No. 96-17057.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 8, 1997.
Decided March 6, 1998.
 
 Lewis R. Warren, Belden, Abbey, Weitzenberg & Kelly, Santa Rosa, California, for defendant-appellant.
 Walter T. Johnson, Lillick & Charles, San Francisco, California, for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of California; D. Lowell Jensen, District Judge, Presiding. D.C. No. CV-95-04674-DLJ(JSB).
 Before: HUG, Chief Judge, WALLACE and HALL, Circuit Judges.OPINION
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 William Smith ("Smith"), owner of the former yacht, Sybarite, appeals the district court's grant of summary judgment in favor of various insurance underwriters ("Underwriters") in the Underwriters' diversity action for declaratory relief against Smith seeking rescission of a yacht insurance policy. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 2
 * Smith was the owner of a yacht known as the Sybarite. In September 1990, Smith and his wife set out on an around-the-world voyage. In 1991, Smith met Steve Cummings in Florida and hired him as a crew member. For the next several years, Cummings traveled with Smith and his wife on the Sybarite. Both Cummings and Smith held Cummings out as captain or co-captain of the vessel. On numerous occasions, Cummings remained aboard and in charge of the Sybarite while Smith and his wife were absent from the vessel. Cummings also acted as Smith's agent for the purpose of overseeing major repairs to the Sybarite.
 
 
 3
 In June 1994, while the Sybarite was in Thailand under Cummings' care, Smith asked Cummings to obtain new insurance for the vessel. As part of the application process, Cummings completed an application containing the question, "Have you or any person you have allowed or may allow to use your craft ever been charged with or convicted for any offense involving dishonesty of any kind, e.g. fraud, arson, robbery, smuggling, theft, or handling stolen goods?" Cummings, who had himself been convicted in three separate proceedings of perjury, making a false statement, and fraud involving the identity and title of a vessel, answered the question "no." Cummings did not believe the question applied to crew members. The completed application was sent to the Underwriters who then issued a $500,000 policy to Smith.
 
 
 4
 Smith rejoined the Sybarite in July 1994, and resumed his voyage with Cummings on board. In April 1995, when the Sybarite reached American Samoa, law enforcement officers arrested Cummings for violation of his probation on felony charges in Florida and returned him to the United States. Smith hired two new crew members and departed from American Samoa.
 
 
 5
 Approximately ten days after leaving American Samoa, the Sybarite suffered a number of problems and, based on the recommendation of the U.S. Coast Guard, the crew abandoned the Sybarite and the vessel sank. At the time of the sinking, Cummings was no longer on the vessel. He was in no way responsible for or connected with the sinking of the vessel.
 
 
 6
 Smith immediately notified the Underwriters of his loss and submitted a claim. In response, the Underwriters claimed they were entitled to rescind Smith's policy under California Insurance Code §§ 1900(a) (failure to disclose facts that are material to the risk), 1900(b) (giving a false answer on an insurance proposal form), and 1904 (making an intentional misrepresentation on an insurance proposal form), because Smith had failed to disclose Cummings' criminal history. Smith filed a counterclaim for breach of the insurance contract. The district court granted the Underwriters' subsequent motion for summary judgment based on § 1900(a), finding that Smith had failed to disclose facts about Cummings that were material to the Underwriters' assessment of the risk of insuring Smith's vessel, and denied Smith's request for equitable relief.
 
 II
 
 7
 We review a district court's grant of summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir.1985); Fed.R.Civ.P. 56.
 
 III
 
 8
 The district court applied California law to this dispute and neither party objected. Therefore, we consider the parties to have waived any objection to the application of California law. See Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1005 n. 1 (3d Cir.1980) (parties waived any objection to the application of Pennsylvania law by failing to object before the district court).
 
 IV
 
 9
 Smith first argues that the district court erred in granting the Underwriters' motion for summary judgment based on California Insurance Code § 1900(a) because the materiality of Cummings' criminal background should have been determined by the jury. We disagree.
 
 
 10
 Under California Insurance Code § 1900(a), a marine insurance applicant is under a strict duty to communicate, "[a]ll information which he possesses and which is material to the risk." The issue of materiality must be determined "solely by the probable and reasonable influence of the facts upon the party to whom the communication is due." Cal. Ins.Code § 334; see also Holz Rubber Co. v. American Star Ins. Co., 14 Cal.3d 45, 120 Cal.Rptr. 415, 425, 533 P.2d 1055 (1975) ("Essentially, we must decide whether the insurer was misled into accepting the risk or fixing the premium of insurance."). The intent of the disclosing party is not relevant. Washington Int'l Ins. Co. v. Mellone, 773 F.Supp. 189, 191 (C.D.Cal.1990). "[T]he critical question is the effect truthful answers would have had on [the insurer], not on some 'average reasonable' insurer." Imperial Cas. & Indem. Co. v. Sogomonian, 198 Cal.App.3d 169, 243 Cal.Rptr. 639, 644 (1988); see Merchants Fire Assurance Corp. v. Lattimore, 263 F.2d 232, 241 (9th Cir.1959); Burns v. Prudential Ins. Co. of Am., 201 Cal.App.2d 868, 20 Cal.Rptr. 535, 537 (1962).
 
 
 11
 It is well established that "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, in this case, we conclude that there is no genuine dispute as to the materiality of Cummings' criminal history. Cummings played an important role on the Sybarite: both Cummings and Smith held Cummings out as co-captain of the vessel; Cummings oversaw the vessel's business, including acquiring insurance and overseeing major repairs; and Cummings lived on the boat for several years, often in Smith's absence for weeks and months at a time. Given Cummings' significant connection to the vessel and prior conviction for knowingly secreting a boat and possessing an unlawfully obtained certificate of title, we hold that Cummings' undisclosed criminal history was material as a matter of law. Summary judgment based on the § 1900(a) claim was thus appropriate.
 
 V
 
 12
 Smith contends that he was unaware of Cummings' criminal record and of the misrepresentation on the policy application. However, Smith is responsible for the misrepresentations of his agent in obtaining the insurance policy. Smith entrusted his boat to Cummings and authorized Cummings to apply for insurance on his behalf. Representations made to the insurer by the assured's agent are imputed to the assured, and the assured is charged with the knowledge of his agents for purposes of making required disclosures under California law.
 
 VI
 
 13
 Smith also contends that the Underwriters should be barred from rescinding the insurance contract on equitable grounds because, among other things, Smith's failure to disclose Cummings' criminal history was unrelated to the sinking of the vessel. Cummings was removed from the vessel several weeks before the sinking and played no role in its demise.
 
 
 14
 It is true, as Smith contends, that equity is part of the law of admiralty. See Miles v. Apex Marine Corp., 498 U.S. 19, 36, 111 S.Ct. 317, 327, 112 L.Ed.2d 275 (1990) ("[A]dmiralty courts have always shown a special solicitude for the welfare of seamen and their families. '[C]ertainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy.' "). However, this preference for equitable principles in admiralty cases only applies when there is no applicable statute. See id. ("Maritime tort law is now dominated by federal statute, and we are not free to expand remedies at will simply because it might work to the benefit of seamen and those dependent upon them."); see also American Export Lines v. Alvez, 446 U.S. 274, 281-82, 100 S.Ct. 1673, 1677-78, 64 L.Ed.2d 284 (1980).
 
 
 15
 In this case, the controlling California law is statutory in nature and very clear. "California law 'recognizes that the duty of an assured under a marine insurance contract is different than it is under other types of insurance.' " Mellone, 773 F.Supp. at 191. This heightened duty of "utmost good faith" or "uberrimae fidei " is codified in California Insurance Code § 1900 and requires the insured to reveal, even if not asked, "every fact within his/her knowledge that is material to the risk." Id. Because the California legislature clearly intended to create a strict rule of disclosure in the case of maritime insurance, we are not free to create a different rule. Under § 1900, the salient issue is whether Smith, acting through his agent who obtained the policy, failed to disclose a material fact. The contention that he acted in good faith or that the alleged misrepresentation was in no way connected to the property loss simply has no bearing on the statutorily prescribed outcome.
 
 
 16
 AFFIRMED.